**Carol A. MUMMELTHIE, Plaintiff,**

v.

**CITY OF MASON CITY, IOWA, and Alberta Carlene Davis, Defendants.**

No. C 93–3030.

United States District Court, N.D. Iowa, Central Division.

Jan. 9, 1995.

Richard N. Tompkins, Jr., Mason City, IA, for plaintiff.

H.P. Folkers of Mason City, IA, for defendants.

I. PROCEDURAL BACKGROUND ........................................ 1302
 A. Procedural History ..................................................... 1302
 B. Identification Of Plaintiff's Claims .................................. 1303
 1. Lack Of A Jurisdictional Statement ............................. 1303
 2. Plausible Federal Claims ....................................... 1305

II. STANDARDS FOR SUMMARY JUDGMENT .............................. 1306

III. FINDINGS OF FACT ................................................... 1308
 A. Undisputed Facts ...................................................... 1308
 B. Disputed Facts ........................................................ 1309

IV. LEGAL ANALYSIS .................................................1310
 A. Procedural Requirements Of The ADEA ..............................1310
 B. The Exclusivity Of Federal Anti–Discrimination Statutes ..............1312
 1. Principles of Exclusivity ........................................1312
 2. An Overview Of Determinations Of The ADEA's Exclusivity .......1315
 a. The Zombro Decision .....................................1317
 b. Decisions Making An "Independent" Analysis Of ADEA Exclusivity ...............................................1319
 3. Title VII And § 1983 Claims ......................................1321
 C. Another Look At The Exclusivity Of The ADEA ......................1323
 1. The Analogy Between Title VII And The ADEA .................1323
 2. Language And Legislative History Of The ADEA ................1324
 3. The "Sea Clammers Doctrine" ...................................1327
 4. Coexistence Of Remedies .......................................1327
 D. The Constitutional Claims .........................................1329
 1. The Due Process Claim .........................................1329
 2. The Equal Protection Claim ....................................1332
 E. Municipal Liability Under § 1983 ..................................1336

V. CONCLUSION .....................................................1338

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BENNETT, District Judge.

This motion for summary judgment requires the court to consider a nettlesome but fundamentally important question that has as yet been only infrequently litigated: Does the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq., provide the exclusive federal remedy for claims of age discrimination in employment by a municipal employee? The great weight of recent authority holds that the ADEA provides the exclusive federal remedy for age discrimination in employment, thus foreclosing an independent constitutional claim under the equal protection clause of the Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983. However, from its independent analysis of the exclusivity of the ADEA, this court finds that it must respectfully disagree with recent authority, and hold that the ADEA does not provide the exclusive remedy for age discrimination in employment where that discrimination violates independent, federal constitutional rights. Thus, a claim of age discrimination in employment pursuant to § 1983 is not foreclosed by the ADEA when the claim is based on violation of constitutional rights.

Defendant employers, a city and the city clerk, have moved for summary judgment on an employee's lawsuit arising from the employee's failure to be promoted to the position of deputy city clerk. The employee's complaint pursuant to 42 U.S.C. § 1983 alleges violation of the right to due process for failure to promote the employee and age discrimination in violation of the right to equal protection. The employers' motion for summary judgment asserts that the employee's age discrimination claims are barred by failure to comply with the prerequisites for suit under the ADEA. The employers also assert that the employee has no property interest in a promotion upon which to mount a due process claim, and that no age discrimination occurred implicating equal protection. The employee asserts genuine issues of material fact precluding summary judgment, and that there is no requirement that she exhaust administrative remedies before filing claims for violation of her federal constitutional rights.

## I. PROCEDURAL BACKGROUND

### A. Procedural History

Plaintiff Carol A. Mummelthie filed her complaint in this action, styled a "Petition," on April 30, 1994, against her employer, the City of Mason City, Iowa (the City), and Alberta Carlene Davis, the Clerk of the City, as the result of Mummelthie's failure to be promoted to the position of Deputy City Clerk. Defendants answered the complaint

on August 2, 1993, following acknowledgement of service on July 22, 1993, by the Mayor of Mason City.

■ The court has considerable doubt that acknowledgement of service by the Mayor effected proper service on defendant Davis. However, Davis has answered the complaint, thus submitting to the jurisdiction of this court, without challenging the effectiveness of service upon her either in her answer or by pre-answer motion. Therefore, the court concludes that Davis has waived any challenge to personal jurisdiction over her in this case. *See Fed.R.Civ.P.* 12(h); *White v. National Football League,* 41 F.3d 402 (8th Cir.1994) ("Like other such rights, therefore, the personal jurisdiction requirement can be waived. [*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694] 703, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 [(1982)]. *Fed.R.Civ.P.* 12(h) contemplates the involuntary waiver of a defense of lack of personal jurisdiction if it is not included in a motion or in a responsive pleading. We have held, moreover, that the rule 'sets only the outer limits of waiver; it does not preclude waiver by implication,'" quoting *Yeldell, infra*); *Yeldell v. Tutt,* 913 F.2d 533, 539 (8th Cir.1990).

■ On May 27, 1994, defendants moved for summary judgment on the entirety of Mummelthie's complaint. Mummelthie failed to file any timely response to the motion for summary judgment. On October 4, 1994, in the interest of justice, this court ordered Mummelthie to respond to the motion for summary judgment within ten days, stating that failure to do so might result in the granting of defendants' motion and dismissal of the case. Mummelthie ultimately filed a resistance to the motion for summary judgment on October 17, 1994. No party has requested a hearing on defendants' motion for summary judgment as required by N.D.Ia. LR 14(c).[1] Therefore, the court considers that this matter is now fully submitted and will enter its ruling.

## B. Identification Of Plaintiff's Claims

The complaint in this matter is not a model of artful pleading. Consequently, the court and the parties have been at some pains to ascertain the nature of Mummelthie's claims. Mummelthie's complaint states in pertinent part that

> [o]n or about September 1, 1992, the defendants, or each of them, deprived the plaintiff of a right protected by the Constitution or the laws of the United States by depriving her of a promotion to the position of deputy or assistant clerk for the City of Mason City.

Complaint, ¶ 4. The complaint asserts further that defendants acted under color of state law, Complaint, ¶ 5, that defendants were the proximate cause of Mummelthie's injuries, Complaint, ¶ 6, and asserts various items of damages. Complaint, ¶ 7. Finally, the complaint states that

> [t]his action is brought pursuant to 42 U.S.C. Section 1983 and the damages exceed the jurisdictional amount under Federal law.

Complaint, ¶ 8.

### 1. Lack Of A Jurisdictional Statement

■ There is no other assertion of jurisdiction in the complaint. The references to 42 U.S.C. § 1983 and to violation of rights protected by the Constitution or laws of the United States suggest that the complaint asserts federal question jurisdiction, 28 U.S.C. § 1331; however, the reference to the "juris-

---

1. N.D.Ia.LR 14(c) provides as follows:

 **c. Arguments.** Motions shall be submitted and determined upon the motion papers hereinafter provided. Oral argument of motions may be had on the court's own motion or *on the written request and showing of cause by any party and upon order of court. Such request shall be separately stated at the conclusion of the motion or memorandum and shall be noted in the caption.*

(Emphasis added). The court does not believe that every dispositive motion requires oral argu-

ment before the court enters its ruling, and the court assumes that failure to request oral argument as provided for in N.D.Ia.LR 14(c) indicates that neither the movant nor the resisting party desires such argument. The parties' decisions not to request a hearing may be due to their desire to reduce costs and delays, rather than mere oversight. In the circumstances, the court has concluded that it may render a decision without a hearing.

dictional amount under Federal law" suggests an element necessary only for diversity jurisdiction. 28 U.S.C. § 1332. Plainly, there is no diversity jurisdiction here, because all parties are citizens or residents of the state of Iowa or governmental entities within it. 28 U.S.C. § 1332(a). For jurisdiction to rest on 28 U.S.C. § 1332(a)(1), diversity of citizenship must be complete. No plaintiff may be a citizen of any state of which any defendant is a citizen. *See Strawbridge v. Curtiss,* 3 Cranch. 267 [7 U.S. 267], 2 L.Ed. 435 (1806). That is, *all* of the parties on one side of the lawsuit must be of diverse citizenship from *all* of the parties on the other side of the lawsuit. *Montana Mining Co. v. St. Louis Mining & Milling Co.,* 204 U.S. 204, 213, 27 S.Ct. 254, 256, 51 L.Ed. 444 (1907); *see also American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17, 71 S.Ct. 534, 541, 95 L.Ed. 702 (1951). The court believes that federal question jurisdiction was intended on the basis of allegations of violation of rights secured by the Constitution.

■■■ Claims under 42 U.S.C. §§ 1981, 1983, and 1985, statutes providing for causes of action for violation of federal constitutional rights, require invocation of federal question jurisdiction under either 28 U.S.C. § 1331 or 28 U.S.C. § 1343. *See, e.g., Cabell v. Chavez–Salido,* 454 U.S. 432, 434 n. 4, 102 S.Ct. 735, 737 n. 4, 70 L.Ed.2d 677 (1982) (district court correctly concluded plaintiffs stated a claim under 42 U.S.C. § 1981, with jurisdiction in the federal district court under 28 U.S.C. § 1331); *Envirotech Sanitary Systems, Inc. v. Shoener,* 745 F.Supp. 271, 273 (M.D.Pa.1990) ("the statute only fulfills a procedural or remedial role. Therefore, a party seeking to assert a § 1983 claim in a federal court must point to a separate jurisdiction-conferring statute."); 28 U.S.C. § 1343 (providing for jurisdiction over complaints stating causes of action mentioned in 42 U.S.C. § 1985). Mummelthie has therefore failed to meet her burden to plead federal question jurisdiction under *Fed.R.Civ.P.* 8(a). This failure to plead jurisdiction provides one basis for dismissal of Mummelthie's complaint. Failure to plead federal jurisdiction is fatal, *see, e.g., Department of Recreation & Sports of Puerto Rico v. World Boxing Ass'n,* 942 F.2d 84, 90 (1st Cir.1991)

(instructing district court to dismiss complaint for want of jurisdiction for failure to plead subject matter jurisdiction in the complaint); *Fed.R.Civ.P.* 8(a)(1) (requiring a "short and plain statement of the grounds upon which the court's jurisdiction depends"), and Mummelthie's pleading of jurisdiction here is at best problematical, even though defendants have not sought summary judgment or dismissal on this ground.

■■■ The federal district courts have always been courts of limited jurisdiction. *See* U.S. CONST., Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Management Co. v. United States,* 4 F.3d 643, 646 (8th Cir. 1993) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, *reh'g denied,* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986), citing in turn *Marbury v. Madison,* 1 Cranch 137 [5 U.S. 137], 2 L.Ed. 60 (1803)). *See also Neighborhood Transp. Network, Inc. v. Pena,* 42 F.3d 1169 (8th Cir.1994) (federal court jurisdiction limited by Article III of the Constitution). A federal court therefore has a duty to assure itself that the threshold requirement of subject matter jurisdiction has been met in every case. *Bradley v. American Postal Workers Union, AFL–CIO,* 962 F.2d 800, 802 n. 3 (8th Cir.1992) (citing *Sanders, infra* ); *Thomas v. Basham,* 931 F.2d 521, 523 (8th Cir.1991); *Jader v. Principal Mut. Life Ins. Co.,* 925 F.2d 1075, 1077 (8th Cir.1991); *Barclay Square Properties v. Midwest Fed. Sav. & Loan Ass'n,* 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987). "[T]he cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent." *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 25, 109 S.Ct. 2273, 2287, 105 L.Ed.2d 1 (1989) (Stevens, J., concurring) (citing *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 377, n. 21, 98 S.Ct. 2396, 2404, n. 21, 57 L.Ed.2d 274 (1978); *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975); *California*

*v. LaRue,* 409 U.S. 109, 112, n. 3, 93 S.Ct. 390, 394, n. 3, 34 L.Ed.2d 342 (1972); *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, and n. 17, 71 S.Ct. 534, 541–42, and n. 17, 95 L.Ed. 702 (1951); *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934); *Jackson v. Ashton,* 8 Pet. 148, 149 [33 U.S. 148, 149], 8 L.Ed. 898 (1834)); *Lawrence County v. South Dakota,* 668 F.2d 27, 29 (8th Cir.1982) ("[F]ederal courts operate within jurisdictional constraints and ... parties by their consent cannot confer subject matter jurisdiction upon the federal courts."); *Pacific Nat'l Ins. Co. v. Transport Ins. Co.,* 341 F.2d 514, 516 (8th Cir.), *cert. denied,* 381 U.S. 912, 85 S.Ct. 1536, 14 L.Ed.2d 434 (1965) ("The parties, however, may not confer subject matter jurisdiction upon the federal courts by stipulation, and lack of subject matter jurisdiction cannot be waived by the parties or ignored by the court."). The federal courts have a duty to examine the substantiality of the federal claim throughout the litigation, and must dismiss all claims if the federal claim proves patently meritless even after the trial begins. *Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc.,* 35 F.3d 1226, 1242 (8th Cir.1994); *Sanders,* 823 F.2d at 216. Even where " 'the parties did not raise any jurisdictional issues[, t]his court is obligated to raise such jurisdictional issues if it perceives any.' " *White v. Nix,* 43 F.3d 374 (8th Cir.1994) (quoting *Lewis v. United States Farmers Home Admin.,* 992 F.2d 767, 771 (8th Cir. 1993)). However, the Eighth Circuit Court of Appeals has very recently cautioned that "subject matter jurisdiction should not be used to dismiss a case containing even a remotely plausible federal claim if the parties and the courts have already made [a] vast expenditure of resources." *Pioneer Hi–Bred,* 35 F.3d at 1242. Thus, in the interest of judicial economy and in light of the investment of resources of the parties here, the court will consider whether Mummelthie's complaint can be construed as an inartful attempt to assert plausible federal claims through § 1983 of violation of federal constitutional rights to due process and equal protection under the Fourteenth Amendment, or a plausible claim under the ADEA.

**2. *Plausible Federal Claims***

Defendants, too, have attempted to ascertain the nature of Mummelthie's claims against them:

Defendants have looked to plaintiff's Answers to Interrogatories in an effort to determine the precise claim made. In her answer to Interrogatory # 2, plaintiff states she was denied the rights of due process and equal protection under the 14th Amendment of the United States Constitution. In her answer to Interrogatory # 7 she mentions the "Age Discrimination in Employment Act."

Defendant's Memorandum of Authorities And Written Argument in Support of the Motion for Summary Judgment (hereinafter, "Defendant's Memorandum"), p. 2.

In order for Mummelthie to pursue a due process claim, she must prove that she had a property interest in the promotion she was allegedly denied. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Mummelthie asserts in her resistance to the motion for summary judgment that various written and *de facto* policies of the Clerk's Office of the City created such a property interest in her promotion to the position of deputy clerk. "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). Mummelthie appears to claim that she did not receive treatment equal to that of persons similarly situated in this case on the ground that she was discriminated against on the basis of age. The court therefore reads Mummelthie's complaint as asserting two claims pursuant to 42 U.S.C. § 1983 for violation of federal constitutional rights secured by the Fourteenth Amendment. First, Mummelthie asserts that her right to due process was violated when she was not promoted to deputy clerk despite her property interest in such a promotion created

by policies of the Clerk's Office of the City. Second, Mummelthie asserts that her right to equal protection was violated when she did not receive the promotion because of discrimination against her on the basis of age. Finally, Mummelthie also appears to claim discrimination against her on the basis of age in violation of the ADEA. .

Defendants have moved for summary judgment on all of Mummelthie's claims. First, they assert that there is no genuine issue of material fact that Mummelthie has no property interest in a promotion created by policies of the City. Next, they assert that Mummelthie's § 1983 claim for violation of the right to equal protection founded on an allegation of age discrimination is preempted by the ADEA. Finally, defendants argue that Mummelthie's failure to comply with the notice requirements of the ADEA, 29 U.S.C. § 626(d), is fatal to assertion of any age discrimination claim under the ADEA.

Mummelthie argues that there is a genuine issue of material fact as to whether or not City policies created a property interest in her promotion such that her due process claim is viable. Next, she asserts that there is no requirement that she exhaust ADEA prerequisites for suit before bringing an equal protection claim of age discrimination under 42 U.S.C. § 1983. Mummelthie does not appear to argue that she may pursue an ADEA claim despite failure to comply with the ADEA's notice requirements.

## II. STANDARDS FOR SUMMARY JUDGMENT

■ The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of

material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

■ The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[2] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Mummelthie,

---

2. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel*, 953 F.2d at 394.

and give her the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael*, 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.*, 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield*, 939 F.2d 666, 667 (8th Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

Procedurally, the moving party, defendants here, bear "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). Defendants are not required by *Rule* 56 to support their motion with affidavits or other similar materials negating the opponent's claim. *Id.*

"When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. Mummelthie is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed. R.Civ.P.* 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985) (quoting *Impro Products, Inc. v. Herrick*, 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986).

The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994).

In *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–54, and *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552). If Mummelthie fails to make a sufficient showing of an essential element of a claim with respect to which she has the burden of proof, then defendants are "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247.

The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M-Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)). Summary judgment is appropriate only in " 'those

rare instances where there is no dispute of fact and where there exists only one conclusion.'" *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). The court reasoned that "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Id.* (holding that there was a genuine issue of material fact precluding summary judgment); *Johnson*, 931 F.2d at 1244. With these standards in mind, the court turns to consideration of the defendants' motion for summary judgment.

### III. FINDINGS OF FACT

#### A. Undisputed Facts

The record reveals that the following facts are undisputed. Mummelthie has been an employee of the Clerk's Office of the City since mid-September, 1972, when she was hired as a "PBX" or switchboard operator. Most recently, she has been employed in the positions of clerk/typist and word processor operator. Mummelthie's present position is governed by provisions of the Iowa Civil Service Act, Iowa Code § 400.6. It is also governed by the City's City Personnel Policy, an employee handbook, which is applicable to all non-contractual employees of the city. That policy provides, in pertinent part, that

> [p]resent employees will be considered for promotions before new employees are hired to fill a vacancy. Employees selected for promotion will be given a probationary period of sixty (60) working days. Length of service and qualification for the job will be primary factors in determining promotions. Employees are entitled to file for promotion to any job vacancy for which they are qualified.

City Personnel Policy, p. 5, Art. II, § 2.02 PROMOTION, Defendants' Statement of Material Facts, Exhibit A–7. The position of deputy clerk to which Mummelthie sought to be promoted is not covered by the Iowa Civil Service Act.

During over two decades of service in the Clerk's Office, Mummelthie has also performed several of the office's routine ministerial duties, including recording permit fee payments, preparing city council agendas, and recording records, ordinances and meeting minutes for the Mason City city council (hereinafter city council). She has also substituted for secretaries and others in the city clerk's office over the years and has also become familiar with their jobs.

Vicki Bergdale was the City deputy clerk from 1977 to 1992. In 1992, Ms. Bergdale resigned her position, thereby creating a vacancy. In order to fill the vacancy created by Ms. Bergdale's resignation, on July 1, 1992, the city council advertised for applicants for the opening in the deputy clerk's position. In its announcement, the council included the following job description:

*Supplemental Job Information:*

Extensive responsible experience in public administration, two years college with course work in business or public administration; or any equivalent combination of education, experience and training which provides the required knowledge, skills and abilities. Must have computer experience. Must be able to take and transcribe difficult dictation.

*Occupational Summary:*

Serves as Administrative Aide to the City Clerk.

Performs variety of administrative duties required by municipal government as set out by Iowa Code, City Clerk and Council. Assists in coordinating activities of personnel engaged in carrying out departmental objectives in unit of governmental agency, utilizing knowledge of municipal purposes, rules, regulations, procedures, and practices, serves as liaison between the City Clerk and other City officials and employees, and the general public, performs a wide variety of clerical account-keeping, secretarial and related tasks.

*Task Statements which may be considered Essential Function(s):*

Drafts the necessary letters and forms as reminders to licensees, reminders and notifications of violations of the code;

Reviews applications for licenses and permits for completeness, accuracy, and eligibility requirements;

Processes and issues licenses and permits;

Maintains up-to-date files of various City licenses and permits;

Prepares reports and composes correspondence, collects and compiles information for City Clerk, Council and public;

Proofreads permanent documents and legal notices;

Prepares and types special assessment programs, minutes, correspondence and legal documents;

Collects monies and balances receipts and ledgers for special assessment programs;

Researches past action of the Council for other City employees, Council Members and the general public;

Balances cash receipts and prepares monthly ledger;

Orders office supplies;

Registers voters;

Processes incoming mail;

Sales over the counter of bus tokens and other items sold by City;

Handles complaints and refers public to various State and Federal agencies;

Serves as Notary Public;

Assists with the preparation of agendas, Council packets and bylaws for city council;

Maintains index of official municipal records;

Routes approved reports and records to Mayor, Council and other Department Heads;

Issues application forms to applicants at counter;

Types reports and forms;

\* \* \* \* \* \*

*Educational Requirements:*

1. 2 year college with courses related to business or public administration which provides a thorough knowledge of modern account-keeping and secretarial practices; good knowledge of business practices, or any equivalent combination of education, experience and training which provides the required knowledge and skills.

2. Must have knowledge of computers.

3. Must be able to take and transcribe difficult dictation.

Defendants' Memorandum, Exhibit A–6.

As a result of that announcement, the city council received nearly 50 applications, one of which was Mummelthie's. A selection committee, consisting of two city council members and one other city employee, was formed to review the applications. The committee's job was to pare down the list of prospects and to submit a roster of final candidates to defendant Davis, who, as City Clerk, ultimately determined who would be hired.

After reviewing the applications, the selection committee narrowed the pool of candidates to four: Mummelthie, age 55, Amanda Wishman and Jennifer Peterson, both substantially younger than Mummelthie, and Diana Black, in her late twenties, the person eventually selected to fill the deputy clerk position. Ms. Black had a four-year college degree and some years of experience working in an insurance company office. Mummelthie did not have the two years of college courses stated in the vacancy notice's listing of educational requirements, but asserts sufficient combination of education and experience to qualify for the position. The City asserts that Mummelthie was included in the group of finalists because of her length of service in the City Clerk's Office.

Mummelthie concedes that she has never filed a charge or complaint with the Equal Employment Opportunity Commission or commenced proceedings under Iowa law as required by the ADEA provisions requiring exhaustion of administrative remedies, 29 U.S.C. § 626(d).

### B. Disputed Facts

Mummelthie asserts a great many issues of fact she believes are material to her claims. First, Mummelthie takes issue with characterization of her employment in the City Clerk's Office as a switchboard operator or clerk typist. Rather, she asserts that she has been employed to and has performed most, if not all, of the duties of the deputy clerk.

Next, Mummelthie asserts that the City Personnel Policy is a statement of current policies, practices, procedures, and guidelines for the City containing the spirit and intent for the working relationship between the City and its employees. In addition to the City Personnel Policy, Mummelthie asserts that the City has had a custom or policy of filling positions by promotions from within its existing employees. Mummelthie also asserts that Ms. Black, the candidate selected to fill the position of deputy clerk, failed to meet the job qualifications because according to her application she could not "take and transcribe difficult dictation," and because she lacks experience in public administration. Mummelthie also asserts that since she has been hired, Ms. Black has made substantial errors.

Mummelthie asserts that she was included among the finalists for the position of deputy clerk not simply because of her length of service with the City, but because she had an appropriate combination of education and experience to meet the qualifications for the job, and furthermore that she has performed the majority of the tasks specified as part of the position. Mummelthie asserts that she was not selected for the position because of a *de facto* policy of the City to hire people in their twenties in preference to older applicants.

### IV. LEGAL ANALYSIS

Before considering the viability of Mummelthie's claims of constitutional violations, the court will first examine whether or not Mummelthie can now pursue a claim under the ADEA. Such a determination is relevant not only to the question of whether Mummelthie may pursue ADEA claims, but whether she may pursue any age discrimination claims if the ADEA provides the exclusive federal remedy for age discrimination in employment.

### A. Procedural Requirements Of The ADEA

The ADEA's goal is to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). Thus, the ADEA forbids employment discrimination against employees aged forty and older. 29 U.S.C. § 631(a); *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 448 (8th Cir.1993). It provides that it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[3]

The ADEA requires that within 180 days of the alleged unlawful conduct by an employer, the employee file a charge outlining the unlawful conduct with the Equal Employment Opportunity Commission (EEOC). 29 U.S.C. § 626(d) (1982).[4] The EEOC then notifies the employer and seeks "to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." *Id.* If the parties have not compromised after 60 days, the employee can file a civil suit under the ADEA. *Id.* See also *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) (notice must be given of the inten-

---

**3.** The ADEA prohibitions protect workers over age forty. 29 U.S.C. § 631(a). As originally enacted, the ADEA covered employees from 40 to 65 years old. Pub.L. No. 90–202, § 12, 81 Stat. 607 (repealed 1978). The maximum age was raised in 1978 to cover persons aged 40 to 70 years. Pub.L. No. 95–256, § 4, 81 Stat. 607 (repealed 1986). In 1986 Congress removed the upper age limitation entirely, Pub.L. No. 99–592, § 2, 100 Stat. 3342–43 (codified at 29 U.S.C. § 631(a)), except for bona fide mandatory retirement laws for firefighters and law enforcement officers, *Id.* §§ 3–4, 100 Stat. 3342–43 (codified at 29 U.S.C. § 623(i), and tenure for college

professors over age 70. *Id.* § 6, 100 Stat. 3344 (codified at 29 U.S.C. § 631(d)).

**4.** 29 U.S.C. § 626(d)(1) states the following:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—
(1) within 180 days after the alleged unlawful practice occurred ...

tion to sue so that the EEOC or Secretary of Labor can attempt to eliminate the alleged unlawful practice through informal methods); *Brooks v. Monroe Sys. For Business, Inc.,* 873 F.2d 202, 205 (8th Cir.) ("The ADEA states that a civil action may not be commenced until sixty days after a charge alleging unlawful discrimination has been filed with the EEOC," citing 29 U.S.C. § 626(d)), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989).[5] Filing with the EEOC is a condition precedent to later filing a suit under the ADEA. *Boge v. Ringland–Johnson–Crowley Co.,* 976 F.2d 448, 450–51 (8th Cir.1992) (filing of charge with EEOC is required before employee may initiate a civil suit under the ADEA); *Heideman v. PFL, Inc.,* 904 F.2d 1262, 1265 (8th Cir.1990) (filing with EEOC is a "prerequisite" to suit under the ADEA), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *Walker v. St. Anthony's Medical Ctr.,* 881 F.2d 554, 556 (8th Cir.1989) (timely filing of EEOC charge is "prerequisite" to suit); *Brooks,* 873 F.2d at 205 (EEOC filing is a "condition precedent" to suit under the ADEA); *Kriegesmann v. Barry–Wehmiller,* 739 F.2d 357 (8th Cir.) (EEOC filing is condition precedent to suit), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984).

Where an EEOC charge has been filed, a plaintiff exhausts his or her administrative remedies as to "the allegations of the judicial complaint [that are] like or reasonably related to the administrative charges that were timely brought." *Boge,* 976 F.2d at 451; *Anderson v. Block,* 807 F.2d 145, 148 (8th Cir.1986); *see also Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1208 (2d Cir.1993).[6] Equitable relief from the "like or reasonably related" requirement is available where an employee who has filed a charge with the EEOC attempts to litigate a claim that is not part of the charge filed with the EEOC, but which the administrative body refused to accept as an amendment to the charge before it. *Boge,* 976 F.2d at 451–52.

Equitable remedies may also be available for a party who fails to file a charge of violation of the ADEA with the EEOC within 180 days of the alleged misconduct. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *Heideman,* 904 F.2d at 1265 (citing cases holding that the 180–day filing period may be equitably tolled); *Walker,* 881 F.2d at 557 (filing with EEOC is not jurisdictional, and the requirement is subject to equitable tolling, waiver, or estoppel). One basis for equitable tolling is the employee's ignorance of the statutory period, and another is actions of the employer. *Heideman,* 904 F.2d at 1266. The Eighth Circuit Court of Appeals has given the following guidance for when such tolling can occur based on the employer's actions:

> The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakenly have understood would cause the employee to delay filing his charge.

5. A *federal* employee claiming age discrimination in violation of the ADEA

has the option of bringing suit in federal court in the first instance, or of pursuing administrative remedies before the EEOC and then suing in federal court if not satisfied with the administrative results. *See* 29 U.S.C. § 633a(b) and (c). With respect to civil actions brought directly to federal court, the federal employee must give the EEOC notice of intent to sue within 180 days of the alleged discriminatory conduct, and then must wait 30 days before filing suit. *Id.* § 633a(d). The ADEA provisions applicable to federal employees who pursue administrative remedies before initiating a private suit do not, however, contain an express statute of limitations to govern how long

after final agency action the employee has to file a civil action. We must therefore "borrow" an appropriate limitations period from an analogous state or federal provision. *Stevens v. Department of Treasury,* 500 U.S. 1, 7, 111 S.Ct. 1562, 1567, 114 L.Ed.2d 1 (1991). *Long v. Frank,* 22 F.3d 54, 56 (2d Cir.1994); *see also Adler v. Espy,* 35 F.3d 263, 264 (7th Cir. 1994).

6. The Court of Appeals of another circuit has held that the EEOC filing requirement is not met simply by completion of the EEOC's intake questionnaire where the claimant was informed by the EEOC that the intake questionnaire provided insufficient information and no action would be taken upon it. *Perkins v. Silverstein,* 939 F.2d 463, 470 (7th Cir.1991).

*Kriegesmann*, 739 F.2d at 358–59; *see also Heideman*, 904 F.2d at 1266–67 (tolling appropriate because of the "employer's concealment, misrepresentation, or failure to post adequate notice," quoting *Nielsen v. Western Elec. Co., Inc.*, 603 F.2d 741, 743 (8th Cir. 1979)); *Walker*, 881 F.2d at 557 (quoting the above from *Kriegesmann* ).

 Summary judgment is appropriate on an ADEA claim where the plaintiff fails to file the claim with the EEOC in a timely manner. *Nielsen v. Western Elec. Co., Inc.*, 603 F.2d 741 (8th Cir.1979). In this case, Mummelthie concedes that she never filed an age discrimination charge with the EEOC, and has not alleged any excuse for her failure to do so or any wrongful conduct by her employer preventing her from doing so that might provide for equitable tolling of the filing period. The deadline for filing a charge with the EEOC in this case is now long past. Congressionally mandated time requirements, such as the 180–day time period for filing a charge with the EEOC in the ADEA, 29 U.S.C. § 626(d), which are prerequisites "for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984). As the Court stated in *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco*, 447 U.S. at 826, 100 S.Ct. at 2497. Thus, time limitations such as those found in the ADEA "are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452–53 (7th Cir.1990) (discussing the time limitations in § 2000e–5(f)(1)).

Because there has been no timely filing of Mummelthie's age discrimination claims with the EEOC, Mummelthie has not met the preconditions for asserting such claims under the ADEA in federal court. Thus, defendants are entitled to summary judgment in their favor on any part of Mummelthie's complaint that is based on claims of age discrimination under the ADEA.

## B. The Exclusivity Of Federal Anti–Discrimination Statutes

As a consequence of Mummelthie's failure to comply with the preconditions for suit under the ADEA, defendants assert that all of Mummelthie's age discrimination claims must be dismissed, because the ADEA provides the exclusive federal remedy for claims of age discrimination in employment precluding any claims pursuant to § 1983. The court therefore turns to the question of whether and to what extent the ADEA provides Mummelthie's exclusive federal remedy for age discrimination in employment. Consideration of that question begins with examination of fundamental principles of exclusivity and examination and overview of federal decisions on the exclusivity of the ADEA.

### 1. Principles of Exclusivity

 The United States Supreme Court has identified a number of guiding principles to determine whether one act or statute provides the exclusive remedy for a wrong another enactment also appears to address. One general rule is that the more recent of two conflicting statutes governs. *Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). However, "[i]t is a commonplace of statutory construction that the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, ——, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). Thus, a specific statute is not controlled or nullified by a general statute, and the more specific statute is given precedence over the more general one, regardless of priority of enactment, absent clear intention otherwise. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987); *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1992, 48 L.Ed.2d 540 (1976); *Morton v. Mancari*, 417 U.S. 535,

550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974); *Preiser v. Rodriguez,* 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836–37, 36 L.Ed.2d 439 (1973).

The determination of the exclusiveness of a later enactment over an earlier one therefore often focuses on the specificity of the provisions of the later enactment: The Supreme Court has indicated that precisely drawn, detailed statutes may reflect congressional intent to make the new enactment the exclusive remedy, dispensing with more general remedies available in a prior enactment. *Preiser,* 411 U.S. at 489, 93 S.Ct. at 1836. For example, the availability of a "comprehensive enforcement mechanis[m]" for protection of a federal right may show that Congress has specifically foreclosed a remedy under § 1983. *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989); *Smith v. Robinson,* 468 U.S. 992, 1005 n. 9, 104 S.Ct. 3457, 3465 n. 9, 82 L.Ed.2d 746 (1984); *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 21–22, 101 S.Ct. 2615, 2626–28, 69 L.Ed.2d 435 (1981); *Preiser,* 411 U.S. at 489, 93 S.Ct. at 1836. This principle, sometimes called the "*Sea Clammers* doctrine," was articulated in a decision in which the Court held that the existence of express remedies contained in the Federal Water Pollution Control Act (FWPCA) and the Marine Protection, Research, and Sanctuaries Act of 1972 (MPSRA) demonstrated congressional intent to supplant any remedy otherwise available to the plaintiff fishermen under § 1983. *Nat'l Sea Clammers Ass'n,* 453 U.S. at 21, 101 S.Ct. at 2627. The rationale for the Court's conclusion was that Congress would not have passed the later acts with their "own comprehensive enforcement scheme[s]" if plaintiffs could bypass those schemes with § 1983 suits. *Id.* at 19–20, 101 S.Ct. at 2626–27.[7] The Court wrote that

> [w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate con-gressional intent to preclude the remedy of suits under § 1983.... It is hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies [in the FWPCA and MPRSA]....

*Id.* at 20, 101 S.Ct. at 2626. However, the Court in *Sea Clammers* was not confronted with the question of whether a statute's remedies foreclosed § 1983 remedies for violation of rights with an independent source in the Constitution, but only the question of whether the statute's remedies foreclosed § 1983 remedies *for violation of the statute itself, other federal and state statutes, or state common law. Id.* at 19–21, & n. 31, 101 S.Ct. at 2626–27, & n. 31.

The Supreme Court has subsequently cautioned that the statutory framework of the later act must be such that allowing the plaintiff to bring a § 1983 action would actually be inconsistent with Congress' carefully tailored scheme in the new act and that Congress' intent to preclude a § 1983 remedy must be express before a court may conclude that the § 1983 remedy for violation of a federal right is precluded. *Golden State Transit Corp.,* 493 U.S. at 106–07, 110 S.Ct. at 448–49. In *Golden State,* the Court wrote

> The availability of administrative mechanisms to protect the plaintiff's interests is not necessarily sufficient to demonstrate that Congress intended to foreclose a § 1983 remedy. See *Wright [v. Roanoke Redevelopment & Housing Auth.],* 479 U.S. [418], 425–28 [107 S.Ct. 766, 771–73, 93 L.Ed.2d 781] [ (1987) ]; *Cf. Rosada v. Wyman,* 397 U.S. 397, 420 [90 S.Ct. 1207, 1222, 25 L.Ed.2d 442] (1970). Rather, the statutory framework must be such that "[a]llowing a plaintiff" to bring a § 1983 action "would be inconsistent with Congress' carefully tailored scheme." *Smith [v. Robinson],* 468 U.S. [992], 1012 [104 S.Ct. 3457, 3468, 82 L.Ed.2d 746] [ (1984) ]. The burden to demonstrate that Congress has expressly withdrawn the remedy is on the defendant. *See Wright,* 479 U.S., at

---

7. The Court has remarked that courts should be as hesitant to infer that Congress intended to authorize evasion of a statute at will as it is hesitant to infer that Congress intended to nar-row the scope of a statute. *United States v. United Continental Tuna Corp.,* 425 U.S. 164, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976).

423 [110 S.Ct., at 2930]; *National Sea Clammers*, 453 U.S., at 21, n. 31 [101 S.Ct., at 2627, n. 31]. " 'We do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right." *Wright*, 479 U.S., at 423–424 [107 S.Ct., at 770–771] (quoting *Smith v. Robinson*, 468 U.S., at 1012 [104 S.Ct., at 3468]).

*Id.*, 493 U.S. at 106–07, 110 S.Ct. at 448–49 (holding that the NLRB gave plaintiffs rights enforceable under § 1983 because the NLRB lacked its own comprehensive enforcement scheme). The *Golden State Transit* decision has been interpreted by other courts as "synthesiz[ing] prior case law, reaffirming the presumptive availability of a § 1983 remedy for violations of federal statutory rights, but articulating several broad exclusions," finding those exclusions through a two-step analysis. *See, e.g., Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 510, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990); *Albiston v. Maine Comm'r of Human Services*, 7 F.3d 258, 262 (1st Cir.1993); *Ark. Medical Soc'y, Inc. v. Reynolds*, 6 F.3d 519, 523 (8th Cir.1993). The first step is to determine whether the federal statute creates *rights*, and if it does not, a § 1983 remedy is precluded. *Albiston*, 7 F.3d at 262. The second step is to determine whether Congress has specifically foreclosed private enforcement by providing a comprehensive administrative scheme within the statute itself, thus making a § 1983 remedy inconsistent. *Id.; see also Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 510, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (applying two-step *Golden State* analysis to Medicaid statute); *Ark. Medical Soc'y, Inc. v. Reynolds*, 6 F.3d 519, 523 (8th Cir.1993) (also applying the two-step analysis to Medicaid statute). These courts have therefore considered *Golden State* as a corollary to the *Sea Clammers* doctrine, without addressing its emphasis on express or explicit statement of congressional intent before finding that § 1983 remedies have been foreclosed. However, the Supreme Court has further clarified when a comprehensive administrative scheme within a statute forecloses a § 1983 remedy by stating that congressional intent to foreclose § 1983 remedies is apparent only where the other statute's remedial scheme "leaves *no room* for additional private remedies under § 1983." *Suter v. Artist M.*, 503 U.S. 347, —— n. 11, 112 S.Ct. 1360, 1368 n. 11, 118 L.Ed.2d 1 (1992) (Emphasis added; citing *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Sea Clammers*, 453 U.S. 1, 101 S.Ct. 2615). Furthermore, cases in which congressional intent to foreclose a § 1983 remedy may be inferred from a comprehensive remedial scheme are the "exceptional cases," because "§ 1983 remains a generally and presumptively available remedy for claimed violations of federal law." *Livadas v. Bradshaw*, —— U.S. ——, ——, 114 S.Ct. 2068, 2083, 129 L.Ed.2d 93 (1994).

The principles drawn here from the *Golden State Transit, Suter,* and *Livadas* decisions are in accord with another applicable principle articulated by the Supreme Court, which is that a later statute will not be held to have implicitly repealed or preempted an earlier one unless there is a "clear repugnancy" between the two. *United States v. Fausto*, 484 U.S. 439, 452–53, 108 S.Ct. 668, 676–77, 98 L.Ed.2d 830 (1988) (citing *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 456–57, 65 S.Ct. 716, 725–26, 89 L.Ed. 1051 (1945); *Wood v. United States*, 16 Pet. 342, 362–63 [41 U.S. 342, 362–63], 10 L.Ed. 987 (1842)).[8] The Court requires "clear repugnancy," because repeals by implication are not favored. *Crawford Fitting Co.*, 482 U.S. at 442, 107 S.Ct. at 2497; *Rodriguez v. United States*, 480 U.S. 522, 524, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987); *Am. Bank & Trust Co. v. Dallas County*, 463 U.S. 855, 868, 103 S.Ct. 3369, 3377, 77 L.Ed.2d 1072 (1983); *United States v. Will*, 449 U.S. 200, 221, 101 S.Ct. 471, 483, 66 L.Ed.2d 392 (1980); *Allen v. McCurry*, 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980); *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 597 n. 37, 96 S.Ct. 3110, 3121 n. 37, 49

---

**8.** It is therefore also a canon of statutory construction that indefinite congressional expressions cannot negate plain statutory language and cannot work repeal or amendment by implication. *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 788, 101 S.Ct. 2142, 2151, 68 L.Ed.2d 612 (1981).

L.Ed.2d 1141 (1976); *Radzanower,* 426 U.S. at 154, 96 S.Ct. at 1993.[9] To put it another way, "in the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 788, 101 S.Ct. 2142, 2151, 68 L.Ed.2d 612 (1981) (quoting *Mancari,* 417 U.S. at 550, 94 S.Ct. at 2482); *see also Watt v. Alaska,* 451 U.S. at 266, 101 S.Ct. at 1678; *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 190, 98 S.Ct. 2279, 2299, 57 L.Ed.2d 117 (1978). However, statutes are not to be read as irreconcilably conflicting without seeking to ascertain the *actual intent of Congress,* and that intent must be "clear and manifest." *Watt v. Alaska,* 451 U.S. at 266, 101 S.Ct. at 1678; *see also Rodriguez v. United States,* 480 U.S. at 524, 107 S.Ct. at 1392 (intent to repeal must be clear and manifest). Courts are therefore required to read both statutes to give effect to each if courts can do so while preserving the sense and purpose of both statutes. *Watt v. Alaska,* 451 U.S. at 266, 101 S.Ct. at 1678; *Mancari,* 417 U.S. at 551, 94 S.Ct. at 2483. Where two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1017, 104 S.Ct. 2862, 2880, 81 L.Ed.2d 815 (1984); *Administrator, Fed. Aviation Admin. v. Robertson,* 422 U.S. 255, 266, 95 S.Ct. 2140, 2148, 45 L.Ed.2d 164 (1975); *Mancari,* 417 U.S. at 551, 94 S.Ct. at 2483. With these basic principles of exclusivity in mind, the court now turns to an examination of the ADEA's exclusivity as determined by other courts.

### 2. *An Overview Of Determinations Of The ADEA's Exclusivity*

This court acknowledges that most of the reported decisions to consider the question have concluded that the ADEA precludes at least some claims for relief brought under § 1983.[10] These cases fall into several groups.[11] First, a few courts have considered equal protection claims pursuant to § 1983 without considering the question of whether the ADEA provided the exclusive federal remedy for such claims. *See Vance v. Bradley,* 440 U.S. 93, 99 S.Ct.

---

**9.** However, the doctrine disfavoring implied repeals does not justify use of unnecessary construction of language or strained readings to avoid repeal, at least where the prior statute is no longer on the books. *Am. Bank & Trust Co. v. Dallas County,* 463 U.S. 855, 868, 103 S.Ct. 3369, 3377, 77 L.Ed.2d 1072 (1983).

**10.** Title 42 U.S.C. § 1983 provides that

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. New York City Dep't. of Soc. Serv.,* 436 U.S. 658, 685, 98 S.Ct. 2018, 2033, 56 L.Ed.2d 611 (1978). However, § 1983 provides no substantive rights. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 617, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979). "[O]ne cannot go into court and claim a 'violation of section 1983'—for section 1983 by itself does not protect anyone against anything." *Id.* Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution *and laws* [of the United States]." 42 U.S.C. § 1983 (emphasis added); *Maine v. Thiboutot,* 448 U.S. 1, 3, 100 S.Ct. 2502, 2503, 65 L.Ed.2d 555 (1980) ("Constitution and laws" means that § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution). Nonetheless, "where the 'governing statute provides an exclusive remedy for violations of its terms,'" a remedy under § 1983 is not available. *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 101 L.Ed.2d 694 (1981); *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir.1987) (citing *Pennhurst* ). Therein lies the present dilemma: If the ADEA provides the exclusive remedy for age discrimination in employment, including age discrimination in violation of federal constitutional rights, the ADEA forecloses an action pursuant to § 1983 either for violation of the ADEA or for violation of constitutional rights by age discrimination.

**11.** *See* Colleen Gale Treml, Note, *Zombro v. Baltimore City Police Department: Pushing Plaintiffs Down The ADEA Path In Discrimination Suits,* 68 N.C.L.REV. 995 (1990) (hereinafter Treml, Note), in which the author identifies these groups, citing some relevant cases, and also provides an insightful, thorough, and useful criticism of the *Zombro* decision.

939, 59 L.Ed.2d 171 (1979) (considering a fifth amendment equal protection claim although the district court had rejected the plaintiff's ADEA claim); *Johnson v. Mayor of Baltimore,* 731 F.2d 209 (4th Cir.1984), *rev'd on other grounds,* 472 U.S. 353, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985) (considering both an ADEA claim and a fourteenth amendment equal protection claim pursuant to § 1983); *McLaurin v. Fischer,* 768 F.2d 98, 102 (6th Cir.1985) (fourteenth amendment claim along with an ADEA claim); *Alford v. City of Lubbock,* 664 F.2d 1263, 1266 (5th Cir.) (ADEA claim and equal protection claim), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982); *Arritt v. Grisell,* 567 F.2d 1267, 1272 (4th Cir.1977) (equal protection claim in challenge to mandatory retirement). Although acknowledging that some courts have found the ADEA forecloses or preempts § 1983 claims, the First Circuit Court of Appeals specifically declined to address the question, finding that the plaintiff in the case before it had failed to present a viable claim for violation of federal constitutional rights pursuant to § 1983. *Izquierdo Prieto v. Mercado Rosa,* 894 F.2d 467, 470 (1st Cir.1990). *See also Castro v. United States,* 775 F.2d 399 (1st Cir.1985) (finding that § 1983 claim could not be pursued independently of ADEA claim only because § 1983 did not apply to alleged violation of federal constitutional rights by federal officials acting pursuant to federal law); *Morris v. Kansas Dep't of Revenue,* 849 F.Supp. 1421, 1425 (D.Kan.1994) (court did not need to reach exclusivity issue because plaintiff failed to plead § 1983 claim adequately). One court has held that where there is a viable claim of a constitutional violation that is not based on age discrimination, the ADEA provides no bar to pursuit of such an action. *Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir.1983) (ADEA was exclusive federal remedy for age discrimination, but Veteran's Administration employee could pursue a Fifth Amendment due process claim despite ADEA because the claim was not based on age discrimination).

▪ In a second group of cases, courts have uniformly held that the ADEA is the exclusive remedy for age discrimination in employment involving *federal* employees. *Purtill v. Harris,* 658 F.2d 134, 138 (3d Cir. 1981), *cert. denied sub nom. Purtill v. Heckler,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983); *Paterson v. Weinberger,* 644 F.2d 521, 524–25 (5th Cir.1981); *White v. Frank,* 718 F.Supp. 592, 595 (W.D.Tex.1989), *aff'd,* 895 F.2d 243 (5th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990); *Dodson v. U.S. Army Fin. & Accounting Ctr.,* 636 F.Supp. 894, 895–96 (S.D.Ind.1986); *Giles v. EEOC,* 520 F.Supp. 1198 (E.D.Mo.1981); *Christie v. Marston,* 451 F.Supp. 1142, 1146 (N.D.Ill.1978). Title VII is also the exclusive remedy for federal employees for other forms of discrimination in employment, and for the same reason: Amendments to both Title VII and the ADEA in the early 1970s "[f]or the first time, permit[ted] Federal employees to sue the Federal Government in discrimination cases." *Brown v. General Servs. Admin.,* 425 U.S. 820, 828–29, 96 S.Ct. 1961, 1965–67, 48 L.Ed.2d 402 (1976) (quoting comments of Sen. Alan Cranston, co-author of the amendment to Title VII, in 118 CONG.REC. 4929 (1972)), *and compare Christie,* 451 F.Supp. at 1146 (recognizing that this was also true of the amendments to the ADEA).[12] The distinction between federal and non-federal employees is further underlined in the ADEA, because it provides separate procedures for federal employees in 29 U.S.C. § 633a.

▪ As for claims by state, local, and private employees, courts have held that § 1983 claims based directly on violation of the ADEA and not on independent, federal constitutional rights, cannot be sustained. *Price v. County of Erie,* 654 F.Supp. 1206 (W.D.N.Y.1987); *Morgan v. Humboldt County Sch. Dist.,* 623 F.Supp. 440 (D.Nev.1985);

---

12. When Congress passed the ADEA in 1967, the Act did not apply to federal, state, or local governments. In the 1974 amendments, Congress extended the ADEA to any employer who is "a State or political subdivision of a State, and any agency or instrumentality of a State or political subdivision of a State." Pub.L. No. 93–259, § 28, 88 Stat. 74 (codified at 29 U.S.C. § 630(b)). The 1974 amendments also added the special enforcement scheme for federal employees embodied in § 633a.

*McCroan v. Bailey,* 543 F.Supp. 1201 (S.D.Ga.1982); *Bleakley v. Jekyll Island–State Park Auth.,* 536 F.Supp. 236 (S.D.Ga. 1982). The court has no dispute with the conclusions of those federal courts holding that the ADEA provides the exclusive remedy for age discrimination in employment for *federal* employees or those holding that state, local, and private employees cannot use § 1983 to address violations based directly on the ADEA itself and not on independent, federal constitutional rights. Indeed, neither of these issues is presented here. Mummelthie is neither a federal employee, nor does she allege that she may assert a claim of violation of the ADEA through § 1983.

However, the great weight of recent authority holds that the ADEA is the exclusive federal remedy for age discrimination in employment, including age discrimination in violation of federal constitutional rights, thus foreclosing age discrimination claims brought pursuant to § 1983. *Britt v. The Grocers Supply Co., Inc.,* 978 F.2d 1441, 1448–49 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993); *Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364 (4th Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989); *Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir.1983); *Tranello v. Frey,* 758 F.Supp. 841 (W.D.N.Y. 1991), *aff'd,* 962 F.2d 244 (2d Cir.1992), *cert. denied sub nom. County of Monroe v. Tranello,* —— U.S. ——, 113 S.Ct. 813, 121 L.Ed.2d 686 (1992); *Ring v. Crisp County Hosp. Auth.,* 652 F.Supp. 477 (M.D.Ga.1987); *Frye v. Grandy,* 625 F.Supp. 1573, 1576 (D.Md.1986); *but see Howard v. Daiichiya–Love's Bakery, Inc.,* 714 F.Supp. 1108, 1113 (D.Haw.1989) ("[The ADEA] is not an exclusive remedy, in that it does not abrogate remedies which already existed."); *Haag v. Board of Educ.,* 655 F.Supp. 1267 (N.D.Ill. 1987) (allowing § 1983 suit by teacher for age discrimination); *Price v. County of Erie,* 654 F.Supp. 1206, 1208 (W.D.N.Y.1987) (allowing § 1983 action "based not upon a substantive violation of the ADEA but rather upon substantive violations of the United States Constitution"); *Morgan v. Humboldt County Sch. Dist.,* 623 F.Supp. 440 (D.Nev. 1985) (if a plaintiff alleges facts in a complaint that "defendants violated some federal-ly secured right other than those already protected by the ADEA, a separate § 1983 [action] could lie"); *Bleakley v. Jekyll Island–State Park Auth.,* 536 F.Supp. 236 (S.D.Ga.1982) (holding that state agency could be sued under the fourteenth amendment and § 1983 despite the ADEA). If the ADEA is indeed the exclusive remedy for age discrimination in employment, then Mummelthie cannot pursue her claim of age discrimination brought pursuant to § 1983. The court must take cognizance of the recent decisions which would require it to hold that the ADEA is Mummelthie's exclusive remedy for age discrimination in this case.

### a. The Zombro Decision

The leading case finding that the ADEA provides the exclusive federal remedy for age discrimination in employment precluding use of § 1983 to assert independent federal constitutional claims is the Fourth Circuit Court of Appeals' decision in *Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364 (4th Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989). Indeed, since *Zombro* was decided, this court has found no authority disagreeing with its conclusion that the ADEA presents the exclusive federal remedy for constitutional claims of age discrimination in employment. However, the majority of the cases holding that the ADEA is the exclusive federal remedy for age discrimination in employment reach that conclusion with little or no independent analysis, relying instead on the decision in *Zombro.* The *Zombro* decision therefore deserves the most careful scrutiny.

In *Zombro,* the plaintiff police officer, who had filed no EEOC complaint and included no ADEA claim in his federal lawsuit alleging age discrimination in employment, brought suit pursuant to § 1983 claiming that his right to equal protection had been violated by a transfer from one division to another, thus damaging his reputation and limiting his prospects for advancement. *Zombro,* 868 F.2d at 1365–66. Zombro was forty-five years old at the time of his transfer, and was transferred along with two other officers with over fifteen years of experience. *Id.* Zombro alleged that the transfer was

based on age because of a desire by the police department to project a younger image in his former division, which was much frequented by tourists. *Id.* Although acknowledging that Zombro's § 1983 complaint was "predicated on an alleged constitutional violation only and [did] not rest in part or in whole on alleged violations of substantive rights under the ADEA" or some other comprehensive statute, the Fourth Circuit Court of Appeals held that the ADEA was Zombro's exclusive federal remedy for age discrimination in employment. *Id.* at 1368.

The court's conclusion was based on a two-pronged analysis. First, the court inferred congressional intent to make the ADEA the exclusive federal remedy for age discrimination in employment from the ADEA's comprehensiveness. *Id.* at 1366. The court concluded that allowing plaintiff to bypass the ADEA's comprehensive administrative process by seeking direct and immediate access to federal court would undermine the goal of the ADEA to achieve compliance through mediation, and would allow the ADEA to be supplanted by alternative judicial relief. *Id.* at 1366–67. The court presumed that if Congress had intended that plaintiffs should have a choice between pursuing rights independently of the ADEA and under the ADEA, it would have explicitly said so. *Id.* at 1367. Next, the court concluded that "additional factors" counselled hesitation before recognizing a § 1983 remedy in age discrimination in employment cases. *Id.* at 1369. These factors included the wide discretion given government employers over personnel matters and the added tolerance for decisions in "paramilitary" departments involving public safety. *Id.* at 1369–70. The court concluded that

> Congress conceived and enacted a precise statutory remedy, the ADEA, to redress the unlawful acts alleged by the Plaintiff.

If we were to bypass the ADEA, as the Plaintiff seeks to do, we would transfer wholesale public employment relations into the federal courts without any concrete and specific expression of federal constitutional priority.

*Id.* at 1370. As an alternative to its conclusion that the ADEA was Zombro's exclusive federal remedy even for his equal protection claim, the court concluded that Zombro did not have a justiciable equal protection claim based on allegedly discriminatory transfer. *Id.* at 1371.

Concurring in part and dissenting in part, Circuit Judge Murnaghan made this blistering criticism of the *Zombro* majority:

> The majority has overstepped its bounds by substituting its judgment for that of Congress on the question of whether enactment of the ADEA repealed § 1983 remedies for alleged equal protection violations arising out of age discrimination in government employment. It is for Congress, not this Court, to decide whether to repeal the statutory remedies created for plaintiffs to seek redress for constitutional violations.

*Zombro,* 868 F.2d at 1372 (Murnaghan, J., concurring in part and dissenting in part). The dissenting opinion argued that the existence of comprehensive remedies in the ADEA was not an indication of Congress' intent to retain or repeal a § 1983 cause of action for enforcement of rights that existed prior to and independently of the ADEA. *Id.* at 1373. The dissent argued that the Supreme Court cases cited by the majority [13] had considered statutes providing for comprehensive enforcement of constitutional violations, but that the ADEA created comprehensive remedies only for violation of its own terms. *Id.* at 1373–74. The dissent also argued that neither the language of the

---

**13.** The majority cited *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), which held that the federal *habeas corpus* statute, 28 U.S.C. § 2254, provided a more specific mechanism for prisoners to challenge their custody on constitutional grounds, thus precluding assertion of § 1983 claims, and *Smith v. Robinson,* 468 U.S. 992, 1009, 104 S.Ct. 3457, 3467, 82 L.Ed.2d 746 (1984), in which the Court held that the Education of the Handicapped Act

("EHA") precluded the plaintiff from using § 1983 to "assert an equal protection claim to a publicly financed special education," because the EHA provided a detailed mechanism for handicapped children to assert constitutional claims. The decision in *Smith* was subsequently superseded by statute, 20 U.S.C. 1415(f), which allows persons who have exhausted the administrative remedies under the EHA to pursue other constitutional and statutory remedies.

ADEA nor its legislative history rebutted the presumption that Congress did not intend to repeal the remedies available under § 1983 by enacting the ADEA. *Id.* at 1374–75. Finally, the dissent concluded that it was for Congress not the courts to decide whether allowing multiple remedies for discrimination would undermine a particular statute's comprehensive enforcement mechanism. *Id.* at 1376.[14]

▮▮▮ This court takes note of these and other flaws it perceives in the majority's rationale in the *Zombro* decision. Although the court in *Zombro* considered legislative intent in arriving at its ruling, it did so via the "*Sea Clammers* doctrine," inferring legislative intent based on its examination of the comprehensiveness of the ADEA, and not by examining the actual legislative history of the act. Thus, the court effectively found a repeal of § 1983 remedies by implication from the comprehensiveness of the ADEA's remedies. Such repeal by implication is disfavored. *Crawford Fitting Co.*, 482 U.S. at 442, 107 S.Ct. at 2497; *Rodriguez v. United States*, 480 U.S. 522, 524, 107 S.Ct. 1391, 1392, 94 L.Ed.2d 533 (1987); *Am. Bank & Trust Co. v. Dallas County*, 463 U.S. 855, 868, 103 S.Ct. 3369, 3377, 77 L.Ed.2d 1072 (1983); *United States v. Will*, 449 U.S. 200, 221, 101 S.Ct. 471, 483, 66 L.Ed.2d 392 (1980); *Allen v. McCurry*, 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980); *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 597 n. 37, 96 S.Ct. 3110, 3121 n. 37, 49

L.Ed.2d 1141 (1976); *Radzanower*, 426 U.S. at 154, 96 S.Ct. at 1993.

This court believes that the majority's decision in *Zombro* was further flawed by failure to consider any analogy between Title VII and the ADEA in its analysis of the ADEA's exclusivity, instead looking to the FLSA. *Zombro*, 868 F.2d at 1368–69. *See also* Treml, Note, 68 N.C.L.REV. at 1015, 1013. However, the court finds the most telling flaw to be that the majority in *Zombro* did not consider either the statutory language of the ADEA itself nor its legislative history, before concluding that the ADEA provided the exclusive federal remedy for age discrimination in employment. *See, e.g., Watt v. Alaska*, 451 U.S. at 266, 101 S.Ct. at 1678; *Rodriguez v. United States*, 480 U.S. at 524, 107 S.Ct. at 1392; *Mancari*, 417 U.S. at 551, 94 S.Ct. at 2483. Thus, the *Zombro* court did not properly consider whether the ADEA and § 1983 are capable of coexistence. *Ruckelshaus*, 467 U.S. at 1017, 104 S.Ct. at 2880; *Robertson*, 422 U.S. at 266, 95 S.Ct. at 2148; *Mancari*, 417 U.S. at 551, 94 S.Ct. at 2483. Because it disagrees with the decision in *Zombro*, this court must conduct its own, independent analysis of the exclusivity of the ADEA. However, the court must first consider the conclusions of other courts that have purportedly made such an independent analysis of the ADEA's exclusivity.

### b. Decisions Making An "Independent" Analysis Of ADEA Exclusivity

Two other decisions purportedly make independent analyses of the ADEA's exclusivi-

---

**14.** Rejecting the majority's conclusion that Congress could not have intended to preserve a § 1983 remedy for age discrimination because it would undermine the enforcement mechanism Congress created under the ADEA, the dissent wrote

It is up to Congress, not this Court, to balance the risks and benefits inherent in allowing alternative remedies to co-exist in the fight against discrimination. In the context of Title VII, Congress clearly believed that the need to retain a variety of methods to combat discrimination outweighed the risk that multiple remedies would undermine Title VII's comprehensive enforcement mechanism. Nothing indicates that Congress intended to strike a different balance in enacting the ADEA.

*Zombro*, 868 F.2d at 1376 (internal citations omitted) (Murnaghan, J., concurring in part and dissenting in part). The dissent next surveyed

the difficulties age discrimination in employment plaintiffs would encounter in mounting equal protection challenges, because of the deferential rational-basis scrutiny afforded age discrimination, as compared to the incentive government employees victimized by other kinds of discrimination covered by Title VII have to bring equal protection claims involving strict scrutiny. *Id.* The dissent concluded that

[s]ince Congress was willing to take the risk that government employees might bypass Title VII's statutory enforcement mechanism in the areas of sex and race discrimination, it seems reasonable that Congress intended to tolerate the much smaller risk that age discrimination plaintiffs might forego the ADEA remedies in favor of a constitutional challenge under § 1983.

*Id.* (internal citations omitted).

ty. The first, *Britt v. The Grocers Supply Co., Inc.,* 978 F.2d 1441, 1448–49 (5th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993), was handed down after *Zombro* was decided, and the second, *Ring v. Crisp County Hosp. Auth.,* 652 F.Supp. 477 (M.D.Ga.1987), was decided by the district court before *Zombro.* These decisions purported to rely both on the presumption that a precisely drawn, detailed statute preempts a more general remedy, and on the legislative history of the ADEA. *See Britt,* 978 F.2d at 1448; *Ring,* 652 F.Supp. at 482. In *Britt,* the Fifth Circuit Court of Appeals, relying on *Ring,* explained the results of examination of the legislative history of the ADEA as follows:

> In analyzing whether the ADEA preempted § 1983, the court in *Ring v. Crisp County Hospital Authority,* [652 F.Supp. 477, 482 (M.D.Ga.1987)], articulates the general rule: a precisely drawn, detailed statute preempts more general remedies. Because of the comprehensive statutory scheme set out under the ADEA and the lack of any legislative history indicating a contrary congressional intent, the *Ring* court concluded that the ADEA is the exclusive remedy for age discrimination. The court rejected an analogy to Title VII which has been held to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The court found that unlike Title VII, nothing in the legislative history of the ADEA indicated that Congress did not intend the ADEA to be the exclusive remedy. "By establishing the ADEA's comprehensive scheme for the resolution of employee complaints of age discrimination, Congress clearly intended that all claims of age discrimination be limited to the rights and procedures authorized by the ADEA." *Ring,* 652 F.Supp. at 482. The court concluded that the

ADEA provided the exclusive remedy for claims of age discrimination, whether those claims are founded on the Constitution or on rights created by the ADEA. We agree.

*Britt,* 978 F.2d at 1448.[15] The *Britt* court also took note of that part of the decision in *Zombro* in which the Fourth Circuit Court of Appeals had identified § 216 of the ADEA, 29 U.S.C. § 626(b), to be part of the FLSA, and had said, " 'it has been held that the statutory remedy of that section is the sole remedy available to the employee for enforcement of whatever rights he may have under the FLSA.' " *Id.* (quoting *Zombro,* 868 F.2d at 1369). Once again, the court in *Britt* inferred congressional intent to make the ADEA the exclusive federal remedy for age discrimination in employment from the "comprehensive statutory scheme clearly embodied in the language and legislative history of the ADEA." *Id.* The court in *Ring* also made this inference of congressional intent— one we find inappropriate. *Ring,* 652 F.Supp. at 482. Also, the court in *Ring,* while considering the analogy to the well-established case law indicating that Title VII is not an exclusive remedy, failed adequately to articulate why this analogy was not persuasive. *Id.*

Relatively few circuit courts of appeals have considered whether the ADEA provides the exclusive remedy for age discrimination in employment, thus precluding claims under § 1983. This court finds the conclusion that plaintiffs cannot pursue § 1983 claims asserting constitutional violations, as opposed to § 1983 claims asserting violations of the ADEA, because of the exclusivity of the ADEA particularly troubling in light of the substantial body of decisions from the circuit courts of appeals holding that Title VII, to which the ADEA has been held to be closely related in both its procedural and remedial

---

15. The court in *Ring,* however, did not conclude that the ADEA preempted any and all § 1983 claims; only claims based on age discrimination:

> Although this court concludes that the ADEA is the exclusive remedy for age discrimination, that does not mean that all of plaintiff's § 1983 claims are preempted. Plaintiff also seeks to enforce his due process and first amendment rights through his § 1983 claim, and these

> claims of constitutional deprivation are distinct from any claim of age discrimination alleged by the plaintiff. Thus, the ADEA does not prevent the plaintiff from asserting his due process and first amendment claims against the defendants. *Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir.1983).

*Ring,* 652 F.Supp. 477, 482 (M.D.Ga.1987).

provisions, *does not* provide the exclusive federal remedy for such constitutional claims. Before turning to its own analysis of whether the ADEA is Mummelthie's exclusive federal remedy, precluding her § 1983 claims, the court will therefore consider to what extent Title VII has been held to be an exclusive federal remedy precluding § 1983 claims.

### 3. Title VII And § 1983 Claims

Cases considering whether Title VII is the exclusive federal remedy for discrimination in employment precluding claims under § 1983 demonstrate even more starkly than do the ADEA cases that exclusivity is determined entirely on the basis of what rights the § 1983 claims seek to vindicate.[16] The Supreme Court has recognized generally that Title VII does not deprive aggrieved parties of other remedies. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975) (Additionally, the court stated that the legislative history of Title VII "manifests a congressional intent to allow an individual to pursue independently [that person's] rights under both Title VII and other applicable state and federal statutes," at 459, 95 S.Ct. at 1719); *Roberts v. College of the Desert*, 870 F.2d 1411, 1415 (9th Cir.1988). In the most recent decision to consider the question of the exclusivity of Title VII, the Second Circuit Court of Appeals wrote that

> [t]he Fourth Circuit, in *Keller*, reviewed the legislative history of Title VII in as

much detail as anyone would wish. *Keller [v. Prince George's County]*, 827 F.2d [952] 958–62, 965–66 [ (4th Cir.1987) ]. We see no need to cover that ground again. Congress undoubtedly and repeatedly considered the exclusivity question and, in the end, resolved not to make Title VII the sole statutory remedy for employment discrimination by state and municipal employers that amounts to a constitutional tort....

> We therefore hold that an employment discrimination plaintiff alleging the violation of a constitutional right may bring suit under § 1983 alone, and is not required to plead concurrently a violation of Title VII.

*Annis v. County of Westchester*, 36 F.3d 251, 255 (2d Cir.1994).[17] In *Keller*, the Fourth Circuit Court of Appeals had remarked that "Congress recognized in adopting Title VII that no single approach to the problem of employment discrimination could be a panacea." *Keller*, 827 F.2d at 957.

The lack of Title VII preemption or exclusivity as to claims cognizable under the constitution found in *Annis* is a consistent theme in Title VII cases. Not surprisingly, other decisions of the Second Circuit have come to the same conclusion as did the *Annis* court that Title VII is not exclusive as to federal constitutional claims brought pursuant to § 1983. *See, e.g., Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir.1994) ("A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action,

---

**16.** Although relatively few circuit courts of appeals have considered the exclusivity of the ADEA, there is a wealth of decisions from the courts of appeals concerning the exclusivity of Title VII. Therefore, this court has not found it necessary to examine district court decisions, which are in accord with the decisions of the circuits, regarding the exclusivity of Title VII as it did when examining the exclusivity of the ADEA.

**17.** The decision in *Keller* does indeed make an exhaustive analysis of the legislative history of Title VII, taking particular cognizance of the debate concerning whether Title VII should preempt actions pursuant to §§ 1981 and 1983. *See, e.g., Keller*, 827 F.2d at 959. This exhaustive analysis of the actual legislative history is to be contrasted with the approach of the ADEA cases above which instead infer legislative intent from the comprehensiveness of the ADEA's statutory

scheme. The "lack of legislative history" concerning survival of § 1983 claims in the face of enactment of the ADEA asserted in *Ring* and *Britt* is simply not borne out by examination of the actual legislative record, as this court hopes to demonstrate below.

The Second Circuit in *Annis* also took note of the fact that Title VII does provide the exclusive remedy for *federal* employees, *Annis*, 36 F.3d at 255 n. 4, which is also a consistent theme of the ADEA cases cited above. Amendments to Title VII "[f]or the first time, permit[ted] Federal employees to sue the Federal Government in discrimination cases." *Brown v. General Servs. Admin.*, 425 U.S. 820, 828–29, 96 S.Ct. 1961, 1965–67, 48 L.Ed.2d 402 (1976) (quoting comments of Sen. Alan Cranston, co-author of the amendment, in 118 Cong.Rec. 4929 (1972)). This court will not consider that point further, as Mummelthie was not a federal employee.

so long as the § 1983 claim is based on a distinct violation of a constitutional right," citing *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143 (2d Cir.1993)).

Other circuits also concur. In *Beardsley v. Webb*, 30 F.3d 524 (4th Cir.1994), the Fourth Circuit Court of Appeals held that 1991 amendments to Title VII did not make it the exclusive remedy precluding § 1983 claims, because cases had repeatedly held that § 1983 and Title VII remedies were intended to coexist. *Beardsley*, 30 F.3d at 527 (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974); *Keller*, 827 F.2d at 956–63). The court in *Beardsley* concluded that it was "more reasonable to presume that Congress intended both avenues of relief to remain open," than to find repeal by implication, citing *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978). *Id.* This presumption of an intention to retain alternative remedies is to be contrasted with the presumption in *Zombro* and other ADEA decisions that a comprehensive remedial scheme indicates an intention to make remedies exclusive, and is also more in keeping with the doctrine disfavoring repeals by implication.

■ It is not a distinct factual basis for the Title VII and § 1983 claims which permits a plaintiff to pursue both, but the violation of rights secured by different sources, Title VII's own provisions and the constitution. The Tenth Circuit Court of Appeals, in a decision in accord with the holdings of the cases cited above, made this point most clearly when it wrote that

[i]n [*Drake v. City of Fort Collins*, 927 F.2d 1156 (10th Cir.1991) ], which involved a Title VII disparate treatment plaintiff who also sought relief under §§ 1981 and 1983, we held that a Title VII plaintiff who "alleges that his ... equal protection rights were violated, and requests remedies for those alleged violations under ... [§] 1983" has stated an independent basis for that claim. *Id.* at 1162. Thus, under *Drake*, the basis for a § 1983 claim is

"independent" from Title VII when it rests on substantive rights provisions *outside* Title VII—that is, when it rests on a constitutional right or a federal statutory right other than those created by Title VII. We emphasize that the basis of a § 1983 claim may be independent of Title VII even if the claims arise from the same factual allegations and even if the conduct alleged in the § 1983 claim also violates Title VII.

*Notari v. Denver Water Dep't*, 971 F.2d 585, 587 (10th Cir.1992) (emphasis in the original). *See also Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1268 (5th Cir.1992) ("Title VII does not preempt a collateral section 1983 action based on the same incident," citing *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573–76 (5th Cir.1989), *cert. denied*, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990)), *cert. denied sub nom. Hurst v. Wilson*, —— U.S. ——, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993); *Polson v. Davis*, 895 F.2d 705 (10th Cir.1990) (acknowledging that Title VII's precisely drawn and detailed structure must be deemed to preempt earlier general remedies, but holding that plaintiff may still pursue § 1983 claim where actions proscribed by Title VII also violate the U.S. Constitution); *Starrett v. Wadley*, 876 F.2d 808, 813 (10th Cir.1989) (conduct which violates Title VII may also violate independently secured constitutional rights and as such would be actionable under § 1983); *Garza v. City of Omaha*, 814 F.2d 553, 555–57 (8th Cir.1987) (upholding action based on both § 1983 and Title VII); *Trigg v. Fort Wayne Community Sch.*, 766 F.2d 299, 301 (7th Cir.1985) (Title VII's legislative history "clearly indicates that § 2 was not intended to displace the existing § 1983 remedy for Fourteenth Amendment violations for state employees.").

■ To put it another way, Title VII provides the exclusive federal remedy for a violation *of its own terms*, but not for conduct that also violates the constitution. *Johnston*, 869 F.2d at 1573; *Roberts*, 870 F.2d at 1415.[18] The "flip side" of this conclu-

---

18. The Ninth Circuit in *Roberts* noted that the Supreme Court had held in *Great Am. Fed. Sav.*

*& Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979), that

sion is that § 1983 does not afford a remedy where the governing statute provides an exclusive remedy for violations of its terms. *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir.1987) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981)); *see also Long v. Laramie County Community College Dist.*, 840 F.2d 743, 752 (10th Cir.) (§ 1983 claim cannot be predicated on right created by Title VII), *cert. denied*, 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988). In light of the uniformity with which the circuit courts have so held, this court believes that Title VII, despite its detailed, comprehensive scheme for remedying discrimination in the workplace, does not provide the exclusive federal remedy for employment discrimination precluding § 1983 claims based on an independent source in the laws or constitution of the United States. The court believes that any conclusion that the ADEA provides such an exclusive federal remedy is suspect because of the close relationship between the ADEA and Title VII.

### C. Another Look At The Exclusivity Of The ADEA

Because the court finds the conclusion that the ADEA provides the exclusive federal remedy for age discrimination in employment suspect for a number of reasons, this court embarks on its own independent analysis of the ADEA's exclusivity. The court's analysis requires it respectfully to disagree with the conclusions of the Fourth Circuit Court of Appeals in *Zombro* and all of the decisions handed down since *Zombro*, and instead to hold that the ADEA is *not* the exclusive federal remedy for constitutional claims of age discrimination in employment. This court's disagreement with the majority's decision in *Zombro* may be summarized as follows: 1) the majority considered the exclusivity of the ADEA by analogy to the FLSA, instead of looking to the more closely related

and thus more persuasive analogy with Title VII; 2) the majority did not examine the language of the ADEA or the legislative history of the ADEA and related provisions of Title VII to make its determination of the exclusivity of the ADEA; 3) rather, the majority inferred congressional intent to make the ADEA exclusive from the comprehensiveness of its enforcement provisions; and 4) the majority did not properly consider whether ADEA and § 1983 remedies could coexist. This court's own analysis begins with examination of the analogy between the ADEA and Title VII.

### 1. The Analogy Between Title VII And The ADEA

The *Zombro* court looked to the FLSA to determine whether the ADEA was the exclusive federal remedy for age discrimination in employment, finding that the FLSA provisions incorporated into the ADEA had been interpreted to provide an exclusive remedy. *Zombro*, 868 F.2d at 1369. However, another court has held that "[t]he connection of the ADEA amendment to the legislation enacting FLSA amendments was largely fortuitous." *Kelly v. Wauconda Park Dist.*, 801 F.2d 269, 271 n. 4 (7th Cir.1986) (quoting *EEOC v. Elrod*, 674 F.2d 601, 610 (7th Cir. 1972), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). Thus, the court concluded that "[t]he FLSA is not particularly helpful in determining the effect of a statute upon prior constitutional claims, because unlike the ADEA or Title VII, the FLSA did not create a statutory right which arguably was already guaranteed by the Constitution." *Id.* In addition, the district court case on which the *Zombro* court based its argument, *Lerwill v. Inflight Motion Pictures, Inc.*, 343 F.Supp. 1027 (N.D.Cal.1972), did not address the exclusivity of the FLSA over independent, non-FLSA rights, but instead held only that the FLSA was exclusive to enforce

section 1985(3) may not be invoked to redress violations of Title VII because section 1985(3) confers no substantive rights. Thus it cannot be invoked when the only right violated is the Title VII right to be free of discrimination in employment. Since *Novotny*, courts have attempted to determine whether its rule applies to actions under § 1983 as well.

*Roberts*, 870 F.2d at 1415. The court in *Roberts* considered that question for the first time in the Ninth Circuit, concluding that "Title VII and section 1983 are not mutually exclusive" when the § 1983 action is for a violation of the Fourteenth Amendment, citing *Keller*, 827 F.2d at 956–63. *Id.*

"whatever rights [a plaintiff] may have under the FLSA." *Lerwill,* 343 F.Supp. at 1029.

Courts have time and again looked to Title VII rather than to the FLSA as the appropriate model for interpreting the ADEA. The Supreme Court and many other courts have extrapolated congressional intent for the ADEA from the closely related Title VII. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 755–56, 99 S.Ct. 2066, 2071–72, 60 L.Ed.2d 609 (1979). *See also Purtill v. Harris,* 658 F.2d 134, 137 (3d Cir.1981) (ADEA prevents *Bivens* claims by federal employees for the same reason Title VII does), *cert. denied sub nom. Purtill v. Heckler,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983). The Supreme Court discussed the close relationship between Title VII and the ADEA most extensively in *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). In that case, the Court noted that the ADEA is "something of a hybrid" of Title VII and the FLSA, but the Court acknowledged that the ADEA and Title VII have two important similarities:

> in their aims—the elimination of discrimination from the workplace—and in their substantive prohibitions. In fact, the prohibitions of the ADEA were derived *in haec verba* from Title VII.

*Lorillard,* 434 U.S. at 584, 98 S.Ct. at 872. The Seventh Circuit Court of Appeals also stated that "[w]e find the history of Title VII particularly helpful because it is the legislation which most closely parallels the ADEA." *Elrod,* 674 F.2d at 607, *but see Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978) (identifying "significant differences" in the remedial and procedural provisions of the ADEA and Title VII). The Eleventh Circuit Court of Appeals also found that because the prohibitions found in the ADEA were derived *in haec verba* from Title VII, decisions under analogous sections of Title VII were "highly relevant" to issues under the ADEA. *EEOC v. Reno,* 758 F.2d 581 (11th Cir.1985). Similarly, the allocation of the burden of proof in ADEA cases has been held to be the same as in cases arising under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e to 2000e–17 (1988). *Radabaugh,* 997 F.2d at 448; *Beshears v. Asbill,* 930 F.2d 1348, 1353 nn. 6 & 7 (8th Cir.1991). *See also Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 888–89 (9th Cir.1994) (citing *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1420 (9th Cir.1990)); *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993) (citing *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)); *Faulkner v. Super Valu Stores, Inc.,* 3 F.3d 1419, 1425 n. 2 (10th Cir.1993) (citing *MacDonald v. Eastern Wyoming Mental Health Ctr.,* 941 F.2d 1115, 1119 (10th Cir.1991)); *Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 180 (2d Cir.1992) (citing *Grant v. Hazelett Strip–Casting Corp.,* 880 F.2d 1564, 1568 (2d Cir. 1989)); *United States EEOC v. Century Broadcasting Corp.,* 957 F.2d 1446, 1450 (7th Cir.1992) (citing *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir. 1991)). The court concludes that the exclusivity of the ADEA may properly be considered by analogy to Title VII, rather than to the FLSA.

In section IV.B.3, the court identified those decisions holding that Title VII is not the exclusive federal remedy for constitutional claims, which may therefore be brought pursuant to § 1983. By analogy, neither would the ADEA provide the exclusive federal remedy precluding § 1983 constitutional claims. The court therefore turns to the question of whether the language and legislative history of the ADEA confirm the conclusion that the ADEA's exclusivity goes no further than Title VII's.

## 2. *Language And Legislative History Of The ADEA*

 The best means for determining whether or not Congress intended the ADEA to be the exclusive remedy for age discrimination in employment thus foreclosing the use of § 1983 to bring federal constitutional claims, and the basis lacking in so many of the prior ADEA cases on this issue, is an examination of the language and actual legislative history of the ADEA.[19] The court in

---

**19.** "The task of resolving the dispute over the meaning of [a statute] begins where all such

inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters.,*

*Zombro* did not make such an analysis, instead inferring congressional intent from the comprehensiveness of the ADEA. Even where such an inference may seem strong, to draw the inference without consulting the actual legislative history seems to this court to be a cardinal error. *See, e.g., Watt v. Alaska,* 451 U.S. at 266, 101 S.Ct. at 1678 (statutes are not to be read as irreconcilably conflicting without seeking to ascertain the actual intent of Congress, and that intent must be "clear and manifest"); *Rodriguez v. United States,* 480 U.S. at 524, 107 S.Ct. at 1392 (intent to repeal must be clear and manifest). Furthermore, where two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. *Ruckelshaus,* 467 U.S. at 1017, 104 S.Ct. at 2880; *Robertson,* 422 U.S. at 266, 95 S.Ct. at 2148; *Mancari,* 417 U.S. at 551, 94 S.Ct. at 2483.

Looking first to the language of the ADEA, the court finds that the ADEA does not purport to provide a remedy for violation of federal constitutional rights. Nor is there any language in the ADEA indicating congressional intent to provide an exclusive federal remedy thereby foreclosing relief under § 1983 for independent constitutional violations as the result of age discrimination in employment. Rather, in 29 U.S.C. § 621, the purpose of the ADEA is stated to be promotion of "the employment of older persons based on their ability rather than age." Furthermore, in 29 U.S.C. § 623, the ADEA prohibits specific forms of age discrimination in employment without reference to any independent source of rights. Although subsequent sections of the ADEA provide a comprehensive enforcement mechanism, that mechanism is intended to enforce only the substantive rights created by the ADEA itself in § 623. Thus, as the dissent in *Zombro* remarked,

the comprehensiveness of the remedy prescribed in the ADEA, since it does not extend to constitutional claims, does not rebut the presumption that Congress intended to retain § 1983 in age discrimination cases as a method of enforcing substantive rights arising from sources other than the ADEA.

*Zombro,* 868 F.2d at 1373–74 (Murnaghan, J., concurring in part and dissenting in part). Because the language of the ADEA does not purport to extend the Act to constitutional rights, nor hint at any attempt at exclusivity, this court concludes that Congress did not intend the ADEA to provide the exclusive, indeed any, remedy for violation of such constitutional rights in employment.

This conclusion is confirmed by examination of the legislative history of the ADEA. Both Title VII and the ADEA were amended to provide causes of action for employees of state and local governments, Title VII in 1972, 42 U.S.C. § 2000e, and the ADEA in 1974. Pub.L. No. 93–259, § 28, 88 Stat. 74 (codified at 29 U.S.C. § 630(b)). During one hearing prior to amendment to Title VII, Sen. Lloyd Bentsen, who sponsored the same amendments to the ADEA both in 1972 and two years later, when the amendments were adopted, indicated that "those principles underlying the provisions in the EEOC bill (extending Title VII to state and local employees) are directly applicable to the Age Discrimination in Employment Act." 118 CONG.REC. 15,895 (1972). The principles in question were exactly those in question here: the principles that a § 1983 action for equal protection in an age discrimination in employment suit would be retained following the amendments extending Title VII protection to state and local employees. *Id.* The Supreme Court and the circuit courts of appeals have relied upon Senator Bentsen's 1972 comments on his proposed ADEA amendments as evidence of congressional intent in enacting those amendments two years

*Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Id.* (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). The plain

meaning of a statute is decisive, "except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Ron Pair,* 489 U.S. at 242, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

later. *See Lehman v. Nakshian,* 453 U.S. 156, 166–67 nn. 14, 15, 101 S.Ct. 2698, 2704–05 nn. 14, 15, 69 L.Ed.2d 548 (1981) (relying on Sen. Bentsen's comments concerning the 1972 amendments to Title VII as pertinent to the 1974 amendments to the ADEA); *Kelly v. Wauconda Park Dist.,* 801 F.2d 269, 271 (7th Cir.1986) (same); *EEOC v. Elrod,* 674 F.2d 601, 607 (7th Cir.1972) ("Certainly the sponsor of the ADEA amendment, Senator Bentsen, viewed the amendment as parallel to the 1972 amendment extending the coverage of Title VII to government employees. 118 CONG.REC. 15895 (1972)."), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). Congressional intent not to foreclose § 1983 claims with the amendment to Title VII was explicit:

> In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870, 1871, 42 U.S.C. §§ 1981 & 1983, is in no way affected.... Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an additional remedy to redress employment discrimination.... Inclusion of state and local employees among those enjoying the protection of Title VII provides an alternative administrative remedy to the existing prohibition against discrimination perpetuated "under color of state law."

H.R.Rep. No. 238, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News 2137, 2154. Nothing indicates that Congress intended a different result from enacting similar amendments to the ADEA.

In the course of enacting the 1978 amendments to the ADEA,[20] Congress demonstrated its understanding that the ADEA was not the exclusive federal remedy for violation of constitutional protections against age discrimination in employment. Recognizing that some governmental employees had framed their challenges in terms of equal protection violations, Congress expressed no

disapproval of the practice, and made no indication that it believed the ADEA foreclosed such remedies, although its members did express some doubt as to the effectiveness of such challenges in light of the Supreme Court's decision in *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976), which had upheld a mandatory retirement law over equal protection challenges:

> Many believe that the Court's ruling in the *Murgia* case does not close the door completely to successful constitutional attacks on mandatory retirement in the courts—as demonstrated by the recent decision in *Bradley v. Vance* [436 F.Supp. 134 (D.D.C. 1977), *rev'd* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) ]—but they also agree that the likelihood of success is very bleak.

House Select Committee on Aging, *Mandatory Retirement: The Social and Human Cost of Enforced Idleness,* 95th Cong., 1st Sess. 38, *reprinted in* EEOC, Legislative History of the Age Discrimination in Employment Act 347 (1981).

Thus, although other courts have asserted that there was a lack of legislative history from which to conclude that the ADEA *was not* intended to foreclose § 1983 claims, this court concludes that there is actual legislative history from which it must conclude that Congress intended the ADEA as *an alternative administrative and statutory remedy* to § 1983 claims, not as a statute providing the exclusive remedy for such claims. Thus, there is no "clear and manifest" intent in the legislative history of the ADEA to foreclose § 1983 claims founded on a violation of rights not created by the ADEA, and this court must therefore regard each remedy as effective. Congress had the opportunity to express its intent to foreclose § 1983 claims based on constitutional violations when enacting the ADEA and its amendments, either through the language of the Act itself or in the extensive legislative history. Since it is crystal clear that Congress did not intend Title VII to be an exclusive federal remedy, common sense suggests that had Congress

---

**20.** The 1978 amendments raised the protected age category to 70 and prohibited mandatory retirement of certain employees. *See* S.Rep. No. 493, 95th Cong., 2d Sess. 1, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504.

intended a different result in a sister statute like the ADEA, silence would not be the course it would choose to demonstrate that intent. Congress had the opportunity to say clearly that the ADEA provides the exclusive federal remedy for age discrimination in employment. They did not do so. This court is loath to do by implication what Congress refused to do explicitly.

### 3. The "Sea Clammers Doctrine"

This conclusion compels the court to revisit the application of the "Sea Clammers doctrine" to the exclusivity of the ADEA, because it is by application of this doctrine that the Zombro court concluded that the ADEA provided the exclusive federal remedy for age discrimination in employment. Applying the "Sea Clammers doctrine," the Zombro court inferred congressional intent to make the ADEA the exclusive federal remedy for age discrimination in employment from the ADEA's comprehensiveness. Zombro, 868 F.2d at 1366. This court concludes that application of the "Sea Clammers doctrine" was inapposite for several reasons.

First, there is no need to infer congressional intent from the comprehensiveness of the statute when the language of the statute does not reach constitutional claims, and the legislative history shows that Congress in fact intended to retain § 1983 remedies for violations of rights with an independent and pre-existing source. See, e.g., Watt v. Alaska, 451 U.S. at 266, 101 S.Ct. at 1678 (statutes are not to be read as irreconcilably conflicting without seeking to ascertain the actual intent of Congress, and that intent must be "clear and manifest"); Rodriguez v. United States, 480 U.S. at 524, 107 S.Ct. at 1392 (intent to repeal must be clear and manifest). Second, the decision in Sea Clammers is inapposite because that Court was not confronted with the question of whether a statute's remedies foreclosed § 1983 remedies for violation of rights with an independent source in the Constitution, but only the question of whether the statute's remedies foreclosed § 1983 remedies *for violation of*

the statute itself, other federal and state statutes, or state common law. Sea Clammers, 453 U.S. at 19–21, & n. 31, 101 S.Ct. at 2626–27, & n. 31. Third, the comprehensiveness of a remedy in a statute tells nothing about congressional intent to retain other remedies for violation of other rights the new statute does not purport to reach and which existed prior to and independently of enactment of the statute. See 29 U.S.C. § 623 (the ADEA's prohibitions do not extend to constitutional violations). Finally, the rationale for the "Sea Clammers doctrine," that Congress would not have passed later acts with their "own comprehensive enforcement scheme[s]" if plaintiffs could bypass those schemes with § 1983 suits, Sea Clammers, 453 U.S. at 19–20, 101 S.Ct. at 2626, is inapplicable here because in the case of § 1983 and the ADEA, both remedies are capable of coexistence. The "coexistence" issue is discussed in more detail below.

### 4. Coexistence Of Remedies

 Where two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. Ruckelshaus, 467 U.S. at 1017, 104 S.Ct. at 2880; Robertson, 422 U.S. at 266, 95 S.Ct. at 2148; Mancari, 417 U.S. at 551, 94 S.Ct. at 2483. The Zombro majority found that § 1983 and ADEA remedies could not coexist, because allowing a § 1983 claim to proceed would allow a plaintiff to bypass the detailed and comprehensive remedial scheme Congress established in the ADEA. Zombro, 868 F.2d at 1366–67.[21] However, this court concludes that there is no bypass of the ADEA when § 1983 is used to vindicate federal constitutional claims of age discrimination. Congress established the remedial scheme of the ADEA *to vindicate rights secured by the ADEA*, not to vindicate rights secured by the Constitution. Providing a means to vindicate rights secured by the Constitution has always been the purpose of § 1983. See Monell v. New York City Dep't

---

21. This court notes that the administrative procedures and remedies available under Title VII are in fact more detailed and comprehensive than those under the ADEA, yet Congress specifically intended bypass of Title VII's comprehensive remedial scheme by allowing pursuit of constitutional claims via § 1983.

*of Social Servs.,* 436 U.S. 658, 685, 98 S.Ct. 2018, 2033, 56 L.Ed.2d 611 (1978) (Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights."). To put it another way, although in circumstances in which the same conduct of the employer is at issue in both an ADEA claim and a § 1983 claim, it may appear that a plaintiff is being allowed to bypass ADEA procedures to address the employer's *conduct* by way of § 1983, the plaintiff pursuing a § 1983 claim is only bypassing ADEA procedures not applicable to the *constitutional right* the plaintiff is seeking to vindicate. Although the wrongful conduct may be the same in each case, the wrong each remedy is intended to address is different: one wrong is violation of a statute, the other is violation of federal constitutional rights. Thus, the plaintiff pursuing a § 1983 remedy for a non-ADEA right is not doing so simply to gain some procedural advantage by bypassing ADEA procedures, *see, e.g., Saulpaugh,* 4 F.3d at 143 (§ 1983 cannot be used to gain perceived advantages not available to a Title VII claimant, citing *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984)), but seeking to vindicate a right springing from a different source through the procedures applicable to that right. The court notes that the entire issue of exclusivity or preemption should only arise where two congressional enactments, one more specific than the other, address the same wrong, not when they merely address the same conduct. The court perceives this as a corollary to the "clear repugnance" or "irreconcilability" requirement before a court may find repeal of a statute by implication. As the dissent in *Zombro* explained,

> It is up to Congress, not this Court, to balance the risks and benefits inherent in allowing alternative remedies to co-exist in the fight against discrimination.

*Zombro,* 868 F.2d at 1376 (Murnaghan, J., concurring in part and dissenting in part).

The remedies available under the ADEA and § 1983 are not "irreconcilable," because each addresses a different wrong. As this court has shown, Congress was aware that both remedies could be and had been pursued to address discrimination, and did not foreclose § 1983 constitutional attacks on age discrimination in employment by enacting the ADEA. When two "independent" claims exist, "certainly no inconsistency results from permitting both rights to be enforced in their respective forums." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979) (quoting *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 49–50, 94 S.Ct. 1011, 1020–21, 39 L.Ed.2d 147 (1974)). Because § 1983 and the ADEA were intended to remedy violations to different rights, the court concludes that they are capable of coexistence, and this court must regard each as effective. *Ruckelshaus,* 467 U.S. at 1017, 104 S.Ct. at 2880; *Robertson,* 422 U.S. at 266, 95 S.Ct. at 2148; *Mancari,* 417 U.S. at 551, 94 S.Ct. at 2483.

Thus, on the basis of the language of the ADEA itself, the legislative history of the ADEA and related provisions of Title VII, cases examining the legislative history of related provisions of the ADEA and Title VII, all of which provide a better indication of congressional intent than do the inferences to be drawn from the comprehensive enforcement mechanisms of the ADEA, this court concludes that the ADEA is the exclusive federal remedy only for claims of violation of its own provisions. Furthermore, the court concludes that § 1983 and ADEA remedies can and were intended by Congress to coexist where the same set of facts gives rise both to claims of violation of the ADEA and claims of violation of federal constitutional rights. Therefore, where the facts giving rise to the ADEA violation also give rise to a violation of an independent federal right, secured by statute or the Constitution, a plaintiff may pursue either the ADEA or § 1983 remedy or both.

The court therefore concludes that if Mummelthie has a cognizable claim of a constitutional violation based on age discrimination in employment, she may pursue that claim via a cause of action under § 1983 regardless of whether or not a claim under the ADEA based on the same facts has been precluded by failure to exhaust administrative remedies that are preconditions to suit under the ADEA. Defendants are not entitled to sum-

mary judgment on Mummelthie's federal constitutional claims brought pursuant to § 1983 on the ground that such claims are foreclosed by the exclusivity of the ADEA.

### D. The Constitutional Claims

 The due process and equal protection clauses of the Fourteenth Amendment, and other provisions of the United States Constitution, "afford protection to employees who serve the government as well as to those who are served by them, and § 1983 provides a cause of action for all citizens injured by an abridgement of those protections." *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1065–66, 117 L.Ed.2d 261 (1992). The court concluded above that Mummelthie had somewhat inartfully pleaded two constitutional claims which she is attempting to pursue via § 1983. First, Mummelthie asserts that her right to due process was violated when she was not promoted to deputy clerk despite her property interest in such a promotion created by policies of the Clerk's Office of the City. Second, Mummelthie asserts that her right to equal protection was violated when she did not receive the promotion because of discrimination against her on the basis of age.

### 1. The Due Process Claim

The court notes first that there can be no question that the ADEA does not provide the exclusive federal remedy for Mummelthie's due process claim, because the due process claim is not based on age discrimination. This is so, because where there is a viable claim of a constitutional violation that is not based on age discrimination, the ADEA provides no bar to pursuit of such an action. *Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir.1983) (ADEA was exclusive remedy for age discrimination in employment, but Veteran's Administration employee could pursue a Fifth Amendment due process claim despite ADEA because the claim was not based on age discrimination); *Ring,* 652 F.Supp. at 482 ("[T]he ADEA does not prevent the plaintiff from asserting his due process and first amendment claims against the defendants," because those claims were not based

on age discrimination, citing *Ray v. Nimmo,* 704 F.2d at 1485).

Mummelthie's due process claim is not based on age discrimination, but on her assertion of a property interest in her promotion as the result of policies of the City Clerk's Office. Defendants have moved for summary judgment on Mummelthie's due process claim on the ground that no policy of the City created a property interest for Mummelthie in being promoted to deputy city clerk. Mummelthie argues that there is at least a genuine issue of material fact as to whether or not City practices or policies created a property interest in her promotion.

 To establish a valid § 1983 claim of violation of federal constitutional rights, a plaintiff must demonstrate that the conduct complained of was committed by a person acting under state law and "that the conduct deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution." *Carter v. City of Philadelphia,* 989 F.2d 117, 119 (3d Cir.1993) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986)). The Fourteenth Amendment's due process guarantee applies to public employees who have a "property interest" in the terms or conditions of their employment. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). *See also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 n. 3, 105 S.Ct. 1487, 1491 n. 3, 84 L.Ed.2d 494 (1985) (The Fourteenth Amendment's Due Process Clause protects life, liberty, and property); *Miller v. Lovell,* 14 F.3d 20, 21 (8th Cir.1994) ("Procedural due process requirements only apply, however, to the deprivation of interests encompassed by the Fourteenth Amendment's protection of property and liberty," and finding that plaintiff had no protectible property interest in his public employment, and therefore no due process claim).

 "A government employee is entitled to procedural due process only when he has been deprived of a constitutionally protected property or liberty interest." *Winegar v. Des Moines Indep. Community Sch. Dist.,*

20 F.3d 895, 899 (8th Cir.) (citing *Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972)), *cert. denied,* —— U.S. ——, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994). In order for Mummelthie to pursue a due process claim, she must prove that she had a property interest in the promotion she was allegedly denied. *See, e.g., Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Stuart v. Roache,* 951 F.2d 446, 455 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1948, 118 L.Ed.2d 553 (1992); *Killion by Ackers v. Burl,* 860 F.2d 306 (8th Cir. 1988). Property interests protected by due process are "defined by existing rules or understandings that stem from an independent source such as state law." *Id.; Goss v. Lopez,* 419 U.S. 565, 572–73, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975). *See also Regents of the Univ. of Michigan v. Ewing,* 474 U.S. 214, 222 n. 7, 106 S.Ct. 507, 511 n. 7, 88 L.Ed.2d 523 (1985); *Greeno v. Little Blue Valley Sewer Dist.,* 995 F.2d 861, 864 (8th Cir.1993) ("The existence of a property interest must be determined with reference to state law."); *Packett v. Stenberg,* 969 F.2d 721, 725 (8th Cir.1992) (same); *Blankenbaker v. McCook Pub. Power Dist.,* 940 F.2d 384, 385 (8th Cir.1991) ("Typically, this property interest arises from regulatory or contractual limitations on the employer's ability to terminate an employee."); *Lohorn v. Michal,* 913 F.2d 327, 335 (7th Cir.1990); *Skeets v. Johnson,* 805 F.2d 767, 777 (8th Cir.1986) (property interests are defined by independent sources such as state law).

 "Agreements implied from 'the promisor's words and conduct in light of the surrounding circumstances' " could be independent sources of property interests. *Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Bishop v. Wood,* 426 U.S. 341; 346, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 684 (1976). Thus, there is no doubt that contractual rights are a species of property within the meaning of the Due Process Clause of the Fourteenth Amendment. *Charles v. Baesler,* 910 F.2d 1349, 1352 (6th Cir.1990) (citing *Perry,* 408 U.S. at 601–02, 92 S.Ct. at 2699–2700); *See also Winegar,* 20 F.3d at 899); *Blankenbaker,* 940 F.2d at 385 (contractual limitation may be source of property interest). A prop-

erty interest is also made out by a showing of a *de facto* system of conferring employment benefits where there are "mutually explicit understandings" which include a promise of the employment benefit. *Id.; Colburn v. Trustees of Indiana Univ.,* 973 F.2d 581, 589 (7th Cir.1992); *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1236 (6th Cir.1991). The existence of a custom or practice by a municipality in filling vacancies in a particular way may give rise to the necessary "mutually explicit understanding" between the municipality and the employee. *Winegar,* 20 F.3d at 899 ("A property interest in employment can also be created by implied contract, arising out of customs, practices and *de facto* policies," citing *Sindermann,* 408 U.S. at 601–02, 92 S.Ct. at 2699–2700); *Packett,* 969 F.2d at 725 (also citing *Sindermann* ); *Billish v. City of Chicago,* 962 F.2d 1269, 1300 (7th Cir.1992) (but holding that there was no substantial evidence of such a custom or practice in that case, thus dismissal of the due process claim was appropriate), *as modified,* 989 F.2d 890 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 290, 126 L.Ed.2d 240 (1993).

In *Paskvan,* the plaintiff asserted a property interest in a promotion under Cleveland ordinances by reason of its alleged practice of waiving its right to choose among a group of three qualified eligible applicants and proceed on the basis of test grade rank. 946 F.2d at 1236. The court noted that,

> "[A]greements implied from 'the [defendants'] words and *conduct* in the light of the surrounding circumstances" may be sufficient to constitute a protected property interest. *Perry [v. Sindermann,* 408 U.S. 593] at 602 [92 S.Ct. at 2700]." *Woolsey [v. Hunt],* 932 F.2d [555] 564 (emphasis added), [*cert. denied,* 502 U.S. 867, 112 S.Ct. 195, 116 L.Ed.2d 155 (1991) ]. . . .

Refusal to promote based upon negligence, oversight, or inadvertence is not actionable. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Jones v. Sherrill,* 827 F.2d 1102 (6th Cir. 1987). Paskvan "on information and be-

lief," claims, however, that defendants "intentionally singled [him] out . . . for unfavorable treatment." He claims further deliberate "bad faith" action, unauthorized on defendants' part. . . . Paskvan plainly alleges defendants' universal pattern of conduct of accepting test scores for order of promotion. . . .

*Id.* The appellate court therefore concluded that the district court had erred in granting defendants' motion to dismiss the plaintiff's case in light of plaintiff's sufficient pleading of a "mutually explicit understanding" and custom or practice. *Id.* at 1237. However, in contrast to the conclusion of the court in *Paskvan,* in the present case, the court concludes below that there is no genuine issue of material fact that Mummelthie cannot show a "mutually explicit understanding," custom, or practice sustaining her claim of a property interest in her promotion to deputy city clerk.

▉▉▉ "A person must have a legitimate claim of entitlement to his or her employment to have a property interest in it." *Winegar,* 20 F.3d at 899; *Packett,* 969 F.2d at 724; *Blankenbaker,* 940 F.2d at 385; *McIntosh v. Weinberger,* 810 F.2d 1411, 1433 (8th Cir.1987); *Brockell v. Norton,* 688 F.2d 588, 590 (8th Cir.1982). A "unilateral expectation" of an interest is insufficient. *Coyne v. City of Somerville,* 972 F.2d 440, 443 (1st Cir.1992) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, and citing First Circuit cases so holding); *Lohorn,* 913 F.2d at 335 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). The Eleventh Circuit Court of Appeals has held that " 'a prospective promotion is not a property or liberty interest protected by the fourteenth amendment' " where the plaintiff was merely recommended for promotion. *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1486 (11th Cir. 1992) (quoting *Wu v. Thomas,* 847 F.2d 1480, 1485 (11th Cir.1988), *cert. denied sub nom. Wu v. Board of Trustees of Univ. of Alabama,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989)), *cert. denied sub nom. Deutsch v. Oladeinde,* — U.S. ——, 113

S.Ct. 1586, 123 L.Ed.2d 153 (1993). Courts have also held that where the appointing authority may consider factors in addition to ranking on an eligibility list or prior employment, the plaintiff's expectation of promotion based on such ranking or prior employment will not rise to the level of a "property interest" entitled to constitutional protection. *Stuart,* 951 F.2d at 455; *Burns v. Sullivan,* 619 F.2d 99, 104 (1st Cir.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980).

▉▉▉ A property interest is not established by general statements in handbooks, appointment documents, or elsewhere that an employee will be judged based on some criteria. *Colburn,* 973 F.2d at 589. Rather, property interests exist when an employer's discretion is clearly limited so that the employee cannot be denied employment benefits unless specific conditions are met. *Colburn,* 973 F.2d at 589; *Wallace v. Robinson,* 940 F.2d 243, 247 (7th Cir.1991) (*en banc* ), *cert. denied,* — U.S. ——, 112 S.Ct. 1563, 118 L.Ed.2d 210 (1992) ("Due process comes into play when substantive rules limit the reasons that support action.").

▉▉▉ In the present case, the court concludes that Mummelthie has failed to identify any independent source of state law or policy which creates a property interest in her promotion to the position of deputy city clerk. First, the Iowa Civil Service Act, even if it applied to the position Mummelthie was seeking, which it does not although it does apply to the position she currently holds, does not create such a property interest. Iowa Code § 400.9 provides only that qualified civil service employees have a right to compete for vacancies and promotions. It does not guarantee promotion of any civil service employee. Similarly, the City Personnel Policy provides only that "[p]resent employees will be considered for promotions before new employees are hired to fill a vacancy," City Personnel Policy, p. 5, Art. II, § 2.02 PROMOTION, Defendants' Statement of Material Facts, Exhibit A–7, thus providing for priority of consideration, but no right of promotion. Although the policy does indicate that "length of service and qualification

for the job will be primary factors in determining promotions," *Id.*, it does not make those factors the exclusive considerations, thus limiting the discretion of city authorities to consider other factors. Nor did the search committee's recommendation of Mummelthie as one of four finalists for the position create a property interest in her promotion. *See Oladeinde,* 963 F.2d at 1486.

Mummelthie also asserts that there is a custom or practice of the City to fill vacancies from within the ranks of its own employees, yet the court finds no substantial evidence, nor even sufficient evidence to create a genuine issue of material fact, that such a custom or practice exists. *See Winegar,* 20 F.3d at 899; *Packett,* 969 F.2d at 725; *Billish,* 962 F.2d at 1300. Mummelthie's bald assertion of such a custom without more raises no more than a suspicion; it does not create a genuine issue of material fact. *Metge,* 762 F.2d at 625. There is no "universal pattern of conduct" of appointing only City employees to vacancies in City offices. *Paskvan,* 946 F.2d at 1236. Therefore, the court concludes that Mummelthie has failed to establish a property interest in her promotion to the position of deputy city clerk. Defendants are entitled to summary judgment on Mummelthie's claim of violation of her due process rights.

### 2. The Equal Protection Claim

■ Title 42 U.S.C. § 1983 also provides for vindication of the right to equal protection under the Fourteenth Amendment. *Ricketts v. City of Columbia, Mo.,* 36 F.3d 775, 779 (8th Cir.1994). "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

direction that all persons similarly situated should be treated alike." *Cleburne,* 473 U.S. at 439, 105 S.Ct. at 3253 (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)).

■ The United States Supreme Court has repeatedly held that age is not a suspect classification under the Equal Protection Clause. *Gregory v. Ashcroft,* 501 U.S. 452, 470, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991); *Cleburne,* 473 U.S. at 441, 105 S.Ct. at 3255; *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979); *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2566–68, 49 L.Ed.2d 520 (1976).[22] However, that does not mean that the aged do not have equal protection rights; rather, it means that any classification based on age will be subjected only to a "rational basis" level of scrutiny instead of some heightened level of scrutiny. *Murgia,* 427 U.S. at 312, 96 S.Ct. at 2566. *See also Vance,* 440 U.S. at 97–98, 99 S.Ct. at 943 (upholding Foreign Service Act's mandatory retirement provisions as rationally related to ensuring "professional competence, as well as mental and physical reliability . . . ."); *McCann v. City of Chicago,* 968 F.2d 635, 637 (7th Cir.) (city had rational basis for difference in treatment based on age of police sergeants and patrol officers), *cert. denied,* —— U.S. ——, 113 S.Ct. 495, 121 L.Ed.2d 432 (1992). "In cases where a classification burdens neither a suspect group nor a fundamental interest, 'courts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws.'" *Gregory,* 501 U.S. at 470–71, 111 S.Ct. at 2406–07 (quoting *Vance,* 440 U.S. at 97, 99 S.Ct. at 943).

■ Because the Equal Protection Clause requires the government to treat sim-

---

22. Non-suspect classes are those "not saddled with [the] disabilities [of suspect classes], or subjected to . . . a history of purposeful unequal treatment, or relegated to . . . a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). Examples of other non-suspect groups are the poor, *Rodriguez,* 411 U.S. at 28, 93 S.Ct. at 1294, and the mentally retarded. *Cleburne,* 473 U.S. at 439, 105 S.Ct. at 3253.

Gender is a quasi-suspect group, so sex discrimination receives intermediate scrutiny by courts. *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976) ("[C]lassifications by gender must serve important governmental objectives and must be substantially related to the achievement of these objectives."). Illegitimacy is also a quasi-suspect classification receiving intermediate scrutiny. *Mills v. Habluetzel,* 456 U.S. 91, 98–99, 102 S.Ct. 1549, 1554–55, 71 L.Ed.2d 770 (1982).

ilarly situated people alike, *Cleburne,* 473 U.S. at 439, 105 S.Ct. at 3254, dissimilar treatment of dissimilarly situated persons does not violate equal protection. *Klinger v. Dep't of Corrections,* 31 F.3d 727, 731 (8th Cir.1994); *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.,* 21 F.3d 237, 242 (8th Cir.1994). Thus, the first step in an equal protection case is determining whether the plaintiff has demonstrated that she was treated differently than others who were similarly situated to her. *Klinger,* 31 F.3d at 731 (citing *Samaad v. City of Dallas,* 940 F.2d 925, 940–41 (5th Cir.1991)); *Post v. Harper,* 980 F.2d 491, 495 (8th Cir.1992) ("the essence of equal protection analysis [is that] similarly situated people must receive similar treatment under the law," and finding county employee was not similarly situated to elected public officials, and therefore his equal protection claim failed). Absent a threshold showing that she is similarly situated to those who allegedly received favorable treatment, the plaintiff does not have a viable equal protection claim. *Id.* The similarly situated inquiry focuses on whether the plaintiff is similarly situated to another person or group for purposes of the challenged government action. *Id.; More v. Farrier,* 984 F.2d 269, 271 (8th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 74, 126 L.Ed.2d 43 (1993).[23]

The Eighth Circuit Court of Appeals has held that a § 1983 claim based on alleged violation of equal protection in the employment context is analyzed in the same way as a Title VII claim of sex, race, or religious discrimination, or an ADEA claim of age discrimination. *Hicks v. St. Mary's Honor Ctr.,* 970 F.2d 487, 490–91 (8th Cir.1992), *rev'd on other grounds,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Richmond v. Board of Regents of the Univ. of Minnesota,* 957 F.2d 595, 598 (8th Cir.1992) (burden of showing *prima facie* case of discrimination is the same under Title VII, § 1981, § 1983, or the ADEA); *Briggs v. Anderson,* 796 F.2d 1009, 1021 (8th Cir.1986) (inquiry into intentional discrimination for

individual actions brought under §§ 1981 and 1983 is essentially the same as inquiry under Title VII); *Craik v. Minnesota State Univ. Bd.,* 731 F.2d 465, 468 n. 5 (8th Cir.1984) (issue of discriminatory intent is common to analyses under Fourteenth Amendment, § 1983, and Title VII). *See also Patterson v. McLean Credit Union,* 491 U.S. 164, 186–87, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989) (applying same *prima facie* showing to cases brought under § 1983 as Title VII).

■ It is axiomatic that employment discrimination need not be proved by direct evidence, and indeed, that doing so is often impossible, because as the Supreme Court has said, "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1108 (8th Cir.) (citing *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)), *cert. denied,* — U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994). In employment discrimination cases based on circumstantial evidence, courts apply the analytical framework of shifting burdens developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), and most recently in *St. Mary's Honor Ctr. v. Hicks,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *Gaworski,* 17 F.3d at 1108.

■ Under *McDonnell Douglas* and its progeny, the employment discrimination plaintiff has the initial burden of establishing a *prima facie* case of discrimination by producing evidence that would entitle the plaintiff to prevail unless contradicted and overcome by evidence produced by the defendant. *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 435 (8th Cir.1993). If a *prima facie* case is established, the burden then shifts to the employer to rebut the presumption by producing evidence that the employer made the

---

**23.** The formulation of the appropriate *prima facie* case for alleged discriminatory failure to promote takes into account this requirement that the parties be "similarly situated" in its second and

fourth prongs, which require that the plaintiff and others to whom she compares herself be qualified for the promotion. *See infra,* at p. 1334.

1334

questioned employment decision for a legitimate, non-discriminatory reason. *Id.* The employer's explanation of its actions must be "clear and reasonably specific," *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096, but the employer's burden of production has nonetheless been held to be "exceedingly light." *Batey v. Stone,* 24 F.3d 1330, 1334 (11th Cir. 1994) (citing *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994)). If the employer meets this burden of production, the legal presumption that would justify a judgment as a matter of law based on the plaintiff's *prima facie* case "simply drops out of the picture," and the plaintiff bears the burden of persuading the finder of fact that the proffered reasons are pretextual and that the employment decision was the result of discriminatory intent. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749.[24] The Supreme Court has made clear that the ultimate inquiry is whether the employer intentionally discriminated against the plaintiff. *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983); *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 436 (8th Cir. 1993); *United States v. Johnson,* 28 F.3d 1487, 1494 (8th Cir.1994); *Johnson,* 931 F.2d at 1242; *Brooks v. Monroe Systems For Business, Inc.,* 873 F.2d 202, 204 (8th Cir. 1989); *Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1408 (8th Cir.1987). *See also Klinger,* 31 F.3d at 733 ("A fundamental principle of equal protection is that the Constitution only prohibits intentional or purposeful discrimination by the state," citing *Personnel Adm'r of Mass. v. Feeney,* 442 U.S. 256, 274, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979)); *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1112 (9th Cir.1991) ("In order to prove discrimination in violation of § 1983, a plaintiff must demonstrate that the defendants acted with intent to discriminate."). However, if the defendant's proffered reasons are rejected, the trier of fact may infer the ultimate fact of intentional discrimination. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749 ("The factfinder's disbelief of the reasons put

forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."); *Harvey v. Anheuser–Busch, Inc.,* 38 F.3d 968, 971 (8th Cir. 1994) (quoting *St. Mary's* ); *EEOC v. Cherry–Burrell Corp.,* 35 F.3d 356, 361 (9th Cir. 1994) (quoting *St. Mary's* ); *Gaworski,* 17 F.3d at 1109 (quoting *St. Mary's* ); *Hicks v. St. Mary's Honor Ctr.,* 2 F.3d 265, 266 (8th Cir.1993) (quoting *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749); *Brooks,* 873 F.2d at 204 (submission by the employer of a discredited reason to discharging or failing to promote a person is itself evidence of discriminatory motive.). The finding of discriminatory intent is generally for the trier of fact. *Burger v. McGilley Memorial Chapels, Inc.,* 856 F.2d 1046, 1047 (8th Cir.1988).

■■■■■ To establish a *prima facie* case of discrimination under Title VII, the ADEA, or § 1983, the plaintiff must show that the defendant failed to promote the plaintiff under circumstances which gave rise to an inference of unlawful discrimination. *Davenport v. Riverview Gardens Sch. Dist.,* 30 F.3d 940, 945 (8th Cir.1994); *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1242 (8th Cir.1991) (Title VII discriminatory discharge case, rather than failure to promote). The *prima facie* case criteria, however, differ for each type of employment decision. *Davenport,* 30 F.3d at 944; *Hervey v. City of Little Rock,* 787 F.2d 1223, 1231 (8th Cir.1986). Thus, in a § 1983 case alleging violation of equal protection by failure to promote, the plaintiff must show 1) that he or she is entitled to equal protection; 2) that he or she was qualified for and applied for promotion to a position for which the employer was seeking applicants; 3) that despite his or her qualifications, the plaintiff was rejected; and 4) that other employees of similar qualifications who were not members of a protected group were promoted at the time plaintiff's request for promotion was denied. *Marzec v. Marsh,* 990 F.2d 393, 395–96 (8th Cir.1993) (modifying the showing formulated in

---

**24.** Mummelthie has not made clear whether she asserts a pretext or mixed motive case. The requirements for each kind of case were recently

articulated in *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 448–49 (8th Cir.1993).

*McDonnell Douglas,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)); *Pierce v. Marsh,* 859 F.2d 601, 603 (8th Cir.1988); *Bell v. Bolger,* 708 F.2d 1312, 1316 (8th Cir.1983) (modifying the *McDonnell Douglas* showing for application to discriminatory promotion cases). *See also Davenport,* 30 F.3d at 944–45 (identifying the modifications of the *McDonnell Douglas* factors necessary in various employment situations).

■■■ In the present case, Mummelthie asserts her entitlement to equal protection on the basis of age, and the court therefore concludes that she has met the first element of her *prima facie* case. *Murgia,* 427 U.S. at 312, 96 S.Ct. at 2566. Mummelthie also asserts that she was qualified for the promotion she was seeking, that despite her qualifications she was rejected for the promotion, and that a person with whom Mummelthie was similarly situated or qualified, but for her age, was ultimately selected for the position of deputy city clerk. Defendants assert that Mummelthie was not properly qualified for the position of deputy clerk, but was included in the final pool of candidates out of respect for her years of service to the City. The court is inclined to find that defendants' inclusion of Mummelthie among the finalists for the position is an admission that she was qualified for the position of deputy clerk. At the very least, Mummelthie's inclusion in the final field of candidates establishes a genuine issue of material fact as to whether or not she was as qualified for the promotion as, and therefore similarly situated to, the person ultimately selected. The person ultimately selected was undeniably younger than Mummelthie, and at least arguably suffered from some deficiencies in qualifications for the promotion, thus giving rise to an inference that age was a factor in the decision to select her over Mummelthie. If Mummelthie can show at trial that defendants' assertions of non-discriminatory reasons for hiring the other candidate are not creditable, then defendants' submission of a discredited reason for their selection is itself evidence of discriminatory motive. *St. Mary's,* —— U.S. at ——, 113 S.Ct. at 2749; *Brooks,* 873 F.2d at 204. The finding of discriminatory intent is generally for the trier of fact. *Burger v. McGilley Memorial Chapels, Inc.,* 856 F.2d 1046, 1047 (8th Cir.1988). The court concludes that Mummelthie has either established, or has established a genuine issue of material fact as to, her *prima facie* case.

Nor can the court conclude as a matter of law that defendants have rebutted the inference of discriminatory intent by their assertion that age had nothing to do with their decision [25] and that the candidate they selected had superior qualifications to Mummelthie's.[26] "There will seldom be 'eyewitness'

---

25. For example, Councilmember Watson denied that Mummelthie's age had anything to do with the committee's assessment of her qualifications. He stated that "[a]ge was never a factor even discussed by the committee in making our selection of finalists for the position of Deputy Clerk." Watson Affidavit, p. 3. Similarly, Defendant Davis denied that Plaintiff's age was a consideration in her decision not to hire Plaintiff when she stated that "[a]ge was never a factor in my selection of Diana nor in not selecting Carol Mummelthie to fill the vacancy." Davis Affidavit, p. 5.

26. Ms. Black's job application shows that she lacked, or at least arguably lacked, certain of the specified qualifications, including ability to take difficult dictation, and experience in public administration.

The Court also perceives a conflict between the tasks described in the job announcement and the reasons given by Davis for not hiring Mummelthie. The Court sees the conflict as follows:
 1. The "educational" requirements for the deputy clerk position were two years of college and a good knowledge of business practices, *or any equivalent combination of* education, experience and training which provides the required knowledge and skills; knowledge of computers; and ability to take and transcribe difficult dictation. Yet, the affidavits of both Davis and Watson suggested that a minimum of a two year college degree was considered mandatory and that Mummelthie's on-the-job experience did little more than guarantee that she would make the first cut in the selection process.
 2. The requirements used to evaluate Plaintiff's application included independent-mindedness and self-motivation. Davis stated in her affidavit that Mummelthie was not hired as deputy clerk because Plaintiff "worked best under supervision" and lacked "self-motivation and ability to work independently." Davis Affidavit, p. 5. The job announcement did not state that the successful applicant would need to be independent-minded or self-motivated. To the contrary, read as a whole, the tasks identified in the vacancy notice suggest that a person who was flexible and not unwilling to change

testimony as to the employer's mental processes," *Gaworski,* 17 F.3d at 1108, and the trier of fact is entitled to consider whether the assertions that age was not a factor and that the candidate chosen was better qualified are creditable in light of all of the evidence. Therefore, defendants are not entitled to summary judgment on Mummelthie's claim of violation of her right to equal protection on the ground that Mummelthie has established, or has established a genuine issue of material fact as to, the essential elements of such a claim.

### E. Municipal Liability Under § 1983

Finally, the City argues that it is entitled to summary judgment on the ground that there is no genuine issue of fact that Mummelthie cannot establish the essential elements for municipal liability under § 1983 in this case. Mummelthie asserts that there was a *de facto* policy of the City to hire young employees throughout her tenure there, which is sufficient to establish municipal liability for the violation of her federal constitutional rights. Mummelthie maintains that when the defendants acted favorably on Ms. Black's application, and rejected hers, they demonstrated a long-standing discriminatory policy of not hiring her based on her age. She contends that the position was also open during the 1970s and that she applied for it at that time, only to be passed over for a younger applicant.[27] Further, she noted that she was the oldest applicant for the position in 1992, when Ms. Black was hired.

■ Analysis of a § 1983 claim against a municipality requires the court to separate two different issues: First, whether plaintiff's harm was caused by a constitutional violation, the issue on which the court concluded above that there is at least a genuine

issue of material fact, and second, whether the city is responsible for that violation. *Collins,* 503 U.S. at ——, 112 S.Ct. at 1066; *Oklahoma City v. Tuttle,* 471 U.S. 808, 817, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985). *See also Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202, 103 L.Ed.2d 412 (1989), ("Thus, our first inquiry in any case alleging municipal liability under § 1983 is the question of whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," citing *Monell,* 436 U.S. at 694–95, 98 S.Ct. at 2037; *Springfield v. Kibbe,* 480 U.S. 257, 267, 107 S.Ct. 1114, 1119, 94 L.Ed.2d 293 (1987)). The court now turns to the second of these considerations.

Section 1983 provides a remedy against "any person" who, under color of state law, deprives another of rights protected by the Constitution. *Collins,* 503 U.S. at 120, 112 S.Ct. at 1066.

In *Monell [v. New York City Dep't of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)], the Court held that Congress intended municipalities and other local governmental entities to be included among those persons to whom § 1983 applies. 436 U.S., at 690, 98 S.Ct., [at] 2035. At the same time, the Court made it clear that municipalities may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.,* at 691, 98 S.Ct., at 2036. The Court emphasized that

> "a municipality cannot be held liable *solely* because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory....
>
> "[T]herefore, ... a local government may not be sued under § 1983 for an

---

gears at the direction of the clerk would be the best candidate.

Accordingly, Davis's stated reasons for not considering Mummelthie's application are not consistent with those listed in the job announcement. This suggests that Mummelthie was not considered for reasons other than those stated by Davis. Hence, the trier of fact may infer discrimination in this case.

**27.** Mummelthie also suggests that she was denied the deputy clerk position in the mid–1970s

because prior to the selection process which occurred at that time, she had undergone breast cancer surgery. Defendant Davis argued in her affidavit that this was not true, stating that "I certainly never even thought of the fact she suffered breast cancer in 1975." Davis Affidavit, p. 5. Mummelthie has never pleaded any discrimination on the basis of disability, and therefore the court will not consider the implications of these assertions here.

injury inflicted solely by its employees or agents. Instead, it is when execution of government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*, at 691, 694, 98 S.Ct., at 2037–2038 (emphasis in original). *Collins,* 503 U.S. at 121, 112 S.Ct. at 1066. *See also Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 736, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989) (no *respondeat superior* liability against a municipality for § 1983 claims); *Owen v. City of Independence, Mo.,* 445 U.S. 622, 635, 100 S.Ct. 1398, 1407, 63 L.Ed.2d 673 (1980) (§ 1983 liability reaches "municipal corporations as well as natural 'persons,'" citing, *Monell* ). "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986). "[A] person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk County v. Dodson,* 454 U.S. 312, 317–18, 102 S.Ct. 445, 449–50, 70 L.Ed.2d 509 (1981), (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). Decisions of the Eighth Circuit Court of Appeals reflect these standards. *See, e.g., Coleman v. Watt,* 40 F.3d 255, 258 (8th Cir.1994) (citing standards from *Monell* ); *Frey v. City of Herculaneum, Mo.,* 37 F.3d 1290 (8th Cir.1994) (no *respondeat superior* liability against a municipality for § 1983 claims); *McGautha v. Jackson County, Mo. Collections Dep't,* 36 F.3d 53, 55–56 (8th Cir.1994) (citing the standards stated in *Monell, Jett,* and *Pembaur* ).

▮ Where official policy is lacking, municipal liability may be established "through proof that the alleged misconduct was so pervasive among the non-policy making employees of the municipality 'as to constitute a "custom or usage" with the force of law.'" *McGautha,* 36 F.3d at 56 (quoting *Monell* ); *Jiles v. Ingram,* 944 F.2d 409, 413 (8th Cir.1991) ("Disparate treatment by a governmental entity may be proved by pattern and practice evidence."); *Catlett v. Missouri Highway & Transp. Comm'n,* 828 F.2d 1260, 1265 (8th Cir.1987), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1574, 99 L.Ed.2d 889 (1988). The rationale for this requirement is that it prevents a municipality from escaping liability by improperly delegating policy-making responsibility. *Id.* at 57; *Jiles,* 944 F.2d at 413 (wrong-doing does not have to be by named defendants in order for city to be held liable). Although municipal liability for violating federal constitutional rights may arise from a single act of a policy maker, *see Pembaur,* 475 U.S. at 481–84, 106 S.Ct. at 1299–1301; *McGautha,* 36 F.3d at 56; *Angarita v. St. Louis County,* 981 F.2d 1537, 1546 (8th Cir.1992), municipal liability for an unconstitutional custom or usage cannot arise from a single act. *McGautha,* 36 F.3d at 56 (citing *Wedemeier v. City of Ballwin,* 931 F.2d 24, 26 (8th Cir.1991)). Authority as to specific personnel decisions does not necessarily rise to the level of final policy making authority. *McGautha,* 36 F.3d at 56 (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 128–30, 108 S.Ct. 915, 926–28, 99 L.Ed.2d 107 (1988) (plurality opinion); *Pembaur,* 475 U.S. at 481–84, 106 S.Ct. at 1299–1301). Designation of the official or body responsible for the challenged policy is a matter of state law determined by the court. *Id.* (citing *Jett,* 491 U.S. at 737, 109 S.Ct. at 2724; *Praprotnik,* 485 U.S. at 124, 108 S.Ct. at 925). The Eighth Circuit Court of Appeals has held, however, that where a person heads a governmental department, and is responsible for day-to-day operations, but merely exercises discretion in carrying out officially pronounced policy of the governmental unit, the person does not wield policy-making authority of the type imputable to the governmental unit. *Id.* (citing *Angarita,* 981 F.2d at 1546; *Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir.1994)).

▮ Mummelthie appears to invite the court, in the first instance, to conclude that defendant Davis, the City Clerk, had policy-making authority, and thus her decision not

to hire Mummelthie on the basis of age, if that was in fact the reason, is imputable to the City. The court cannot conclude that Davis, who was indeed the head of the governmental department, and was responsible for its day-to-day operations, did anything other than exercise her discretion in the hiring decision for deputy clerk. The record demonstrates that as a matter of state law and of fact it was the city council that established the policies and qualifications that applied to the selection of a deputy clerk, established a selection committee comprised in part of its members, and then directed to Davis a list of acceptable candidates according to that policy and list of qualifications. Davis's authority to make the specific personnel decision did not clothe her with policy-making authority. See McGautha, 36 F.3d at 56. Rather, Davis merely exercised discretion in carrying out officially pronounced policy of the City. See id. The City cannot be held liable for the single employment decision of Davis not to promote Mummelthie.

■ Mummelthie also asserts that a de facto custom or practice of the City to hire younger employees also existed, and on this basis the City may be held liable on her surviving § 1983 claim. In support of this claim, Mummelthie argues that in 1978, Vicki Bergdale, who was in her twenties, was appointed to the deputy clerk position, and Mummelthie was passed over. Mummelthie asserts that the same thing happened in 1992, when Ms. Black, also in her twenties, was selected over Mummelthie. The court concludes as a matter of law that two incidents separated by some fourteen years do not establish a pattern or practice of the City of hiring younger employees over older employees. The similarity in the age of the prevailing candidates chosen years apart appears to this court to be no more than coincidence, insufficient to generate a genuine issue of material fact. Metge, 762 F.2d at 625 (" 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion,' " quoting Impro Products, 715 F.2d at 1272). Thus, the court concludes that the City is entitled to summary judgment on Mummelthie's equal pro-

tection claim on the ground that Mummelthie cannot establish municipal liability for a claim brought pursuant to § 1983. The only question remaining for trial is whether or not Ms. Davis violated Mummelthie's equal protection rights on the basis of age when she failed to promote Mummelthie to the position of deputy city clerk.

## V. CONCLUSION

The court concludes that certain procedural deficiencies in this case do not require dismissal or entitle defendants to summary judgment. First, although the court has considerable doubt that defendant Davis has ever been properly served, Davis has waived any challenge to personal jurisdiction pursuant to Fed.R.Civ.P. 12(h). Next, despite problematical pleading of a proper jurisdictional basis, the court, heeding the cautions of the Eighth Circuit Court of Appeals in Pioneer Hi–Bred Int'l, 35 F.3d at 1242, construes Mummelthie's complaint to assert federal question jurisdiction pursuant to 28 U.S.C. § 1331, and concludes that Mummelthie's complaint has inartfully pleaded plausible federal claims of violation of her federal constitutional rights to due process and equal protection, and may further have attempted to plead a claim under the ADEA.

Turning to substantive issues, defendants are entitled to summary judgment on any and all claims under the ADEA that Mummelthie may have attempted to plead. There has been no timely filing of Mummelthie's age discrimination claims with the EEOC; thus, Mummelthie has not met the preconditions for asserting such claims under the ADEA in federal court. However, if Mummelthie has a cognizable claim of a constitutional violation based on age discrimination in employment, she may pursue that claim via a cause of action under § 1983 regardless of whether or not a claim under the ADEA based on the same facts has been precluded by failure to exhaust the administrative remedies that are preconditions to suit under the ADEA.

From review of the language of the ADEA itself, the legislative history of the ADEA and related provisions of Title VII, cases

examining the legislative history of related provisions of the ADEA and Title VII, all of which provide a better indication of congressional intent than do the inferences to be drawn from the comprehensive enforcement mechanisms of the ADEA, this court concludes that the ADEA is the exclusive federal remedy only for claims for violation of its own provisions. Furthermore, the court concludes that § 1983 and ADEA remedies can and were intended by Congress to coexist where the same set of facts gives rise both to claims of violation of the ADEA and claims of violation of federal constitutional rights. There is no "clear and manifest" intent in the legislative history of the ADEA to foreclose § 1983 claims founded on a violation of rights not created by the ADEA, and therefore both the ADEA and § 1983 remedies are effective. Where the facts giving rise to the ADEA violation also give rise to a violation of an independent federal right, secured by statute or the Constitution, a plaintiff may pursue either the ADEA or § 1983 remedy or both.

By pursuing a § 1983 claim, even one founded on conduct that also gives rise to an ADEA claim, a plaintiff is not allowed to bypass the detailed and comprehensive remedial scheme Congress established in the ADEA. Rather, the plaintiff is using § 1983 as the proper method for seeking redress for a violation of federal constitutional rights, which is a different wrong from a violation of the ADEA, even where both wrongs stem from the same conduct.

Mummelthie's failure to exhaust administrative remedies under the ADEA did not preclude claims pursuant to § 1983 alleging violation of her rights to due process and equal protection. However, Mummelthie's due process claim fails because Mummelthie has failed to adduce any substantial evidence to support her claim of a property interest in a promotion to the position of deputy clerk. The statutes and policies Mummelthie cites establish only her right to be considered for the promotion, and there is not sufficient evidence even to generate a genuine issue of material fact that any custom or practice of the City created such a property right. Defendants are therefore entitled to summary judgment on Mummelthie's due process claim. However, Mummelthie has at least established a genuine issue of material fact as to whether she can make out a *prima facie* case of age discrimination in violation of equal protection. Furthermore, defendants have failed on the basis of the record currently before the court to rebut the inference of discriminatory intent Mummelthie has established, and the trier of fact is entitled to consider whether the assertions that age was not a factor and that the candidate chosen for the post Mummelthie was seeking was better qualified are creditable in light of all of the evidence. Therefore, summary judgment is not appropriate on Mummelthie's equal protection claim.

Finally, the court concludes that the City is entitled to summary judgment on Mummelthie's § 1983 claims. Mummelthie has failed to establish a genuine issue of material fact that there was a policy, custom, or practice of the City or acts of a policy-maker of the City resulting in discrimination against Mummelthie on the basis of age in violation of equal protection such that the City may be held liable under § 1983. The only question remaining for trial is therefore whether or not Ms. Davis, the remaining defendant, violated Mummelthie's equal protection rights on the basis of age when she failed to promote Mummelthie to the position of deputy city clerk. For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part.

**IT IS SO ORDERED.**